No. 24,612.

THE BOARD OF COUNTY COMMISSIONERS OF WYANDOTTE COUNTY, *Appellant,* v. THE CITY OF KANSAS CITY et al. (The Atchison, Topeka & Santa Fe Railway Company, Appellant), *Appellees.*

SYLLABUS BY THE COURT.

BRIDGES—*Chapter 88, Laws of 1921, Is Unconstitutional.* The act relating to bridges (Laws 1921, ch. 88) contravenes the constitutional provision prohibiting the enactment of a special law where a general law can be made applicable, and is therefore void.

Appeal from Wyandotte district court, division No. 3; WILLIAM H. MC-CAMISH, judge. Opinion filed January 6, 1923. Affirmed.

*W. R. Smith,* of Topeka, *T. M. Van Cleave,* and *E. S. McAnany,* both of Kansas City, for appellant, The Atchison, Topeka & Santa Fe Railway Company; *Charles A. Blair,* of Kansas City, of counsel.

*J. H. Brady,* and *T. F. Railsback,* both of Kansas City, for appellant, The Board of County Commissioners of Wyandotte County.

*H. J. Smith, William Drennan, Willard M. Benton, O. L. Miller,* all of Kansas City, *S. W. Sawyer,* and *John H. Lathrop,* both of Kansas City, Mo., for the appellees.

The opinion of the court was delivered by

JOHNSTON, C. J.: This proceeding was brought to obtain a declaratory judgment as to the interpretation and validity of chapter 88 of the Laws of 1921, "An act relating to bridges." The trial court adjudged the act to be unconstitutional, and the defendants appeal.

The action was brought by the board of county commissioners of Wyandotte county, naming Kansas City, Kan., and several railway companies as defendants. It alleged that Kansas City is a city of the first class with a population in excess of 75,000 inhabitants, lying wholly within Wyandotte county, through which the Kansas river, a navigable stream, flows, and that one of the public streets of the city is Seventh street, and others are Fifth and Twelfth streets, which run north and south across the river. In 1916 the city granted a franchise to the Kansas City Terminal Railway Company which provided for the construction by that company of viaducts within 1,500 feet of the Kansas river over its tracks at Fifth, Seventh and Twelfth streets in the city. The Atchison, Topeka & Santa Fe Company owns and operates tracks along the south bank of the river between the harbor lines and below the level of any bridge that may be constructed across the river at Seventh street. Seventh street, on which the proposed bridge was to be built, is a traffic way from Kansas City, Kan., to Rosedale, Kan., which it is alleged is about to be incorporated with Kansas City, and since the filing of the petition has been made a part of that city, and the proposition of constructing a bridge on that street is to afford convenient travel and expedite communications between the two vicinities. The act passed, under which the bridge is proposed to be built, provides:

"SECTION 1. Where a franchise has been granted a railroad company by any city under the provisions of sections 1315 and 1316, General Statutes of Kansas for the year 1915, which franchise contains provisions for the construction or partial construction by such railway company of a viaduct or

Wyandotte County v. Kansas City.

viaducts within fifteen hundred feet of a navigable river, the board of county commissioners in which such city and river are located may locate, erect, construct, or reconstruct in connection with and joining such viaduct or viaducts a bridge or bridges over such river, and for the purpose of paying the cost and expense of the erection, construction or reconstruction of such bridge or bridges, may issue the bonds of such county, without the same being authorized by any election called or held for such purpose, not exceeding in amount the' sum of one million dollars for each bridge, and subject only to the limitations contained in this act: *Provided,* That nothing contained in this act shall pre-'clude the application to any bridge constructed or reconstructed thereunder of the provisions of chapter 215, Session Laws of 1905, and acts amendatory thereof or supplemental thereto."

The act is assailed on the ground that it is obnoxious to section 17 of article 2 of the constitution, which inhibits special legislation where a general law can be made applicable. There is the further contention that the act contravenes section 1 of article 12 of the constitution, which prohibits the conferring of corporate power by a special act. General laws for the building of bridges with provisions for the issuance of bonds to pay for them have been enacted. There can be no real difficulty in providing for the building of bridges through the means of general laws. Acts which have been passed for that purpose, fix limitations on the bonds to be issued, or the amounts expended for the erection of bridges. One of the requirements is that the question of whether such a bridge shall be built must be submitted to a vote of the qualified electors. The act in question, if valid, would take a county in which certain conditions exist out of the operation of existing general laws applicable to counties throughout the state, and permit it to issue bonds to the amount of a million dollars for each bridge without a vote of the electors, and regardless of the limitations as to the extent of its present indebtedness. It is argued that the act is not only general in form but that it applies to all cities of the state which come within the prescribed class, and that there was a valid basis for the classification made by the legislature. The act is general in form, but the conditions of the classification are obviously local and special. It applies to a city in which a franchise has already been granted under sections 1315 and 1316 of the General Statutes of 1915. Those sections provide that any city having a population of 75,000, for the purpose of aiding in obtaining terminal, switch and depot facilities, is authorized to grant a franchise to a railway company to build and maintain railways across, over and along any street, alley or public grounds for a period not to exceed 200 years.

Under these provisions a franchise had been granted by Kansas City, in Wyandotte county, which provided for the laying of tracks over and along streets and public grounds for elevated tracks and the building of viaducts at the approach of the Kansas river over Fifth, Twelfth, and also Seventh streets where the million dollar bridge is proposed to be erected. It is the only franchise which has been granted under the provisions named. There was the further restriction that the railway company should have been authorized and required under the franchise to construct viaducts *within 1,500 feet of a navigable river*. The conditions prescribed all fit the situation as it existed in Kansas City, in Wyandotte county, and it can hardly be conceived that such peculiar conditions would exist in any other location. The classifications were almost as restrictive and special as if the application of the act had been expressly limited to Wyandotte county. The viaducts were to be erected within 1,500 feet so as to connect with the bridges to be built by the county. The prescribed distance from a navigable river was adapted to the local situation, and was so arbitrary in character that it could not well apply to any other location. It is said that there are two navigable rivers in the state, and that the cities of Wichita and Hutchinson on the Arkansas river at some time might grant a franchise to build viaducts within 1,500 feet of that river, but the specific conditions are so restricted as to point directly to Wyandotte county and indicate that the legislature was passing a special act under the guise of a general law. While the Kansas and Arkansas rivers in this state have been declared and treated for some purposes as navigable, all know that neither of these rivers is scarcely in fact navigated, except for a few miles at the mouth of the Kansas river in Wyandotte county. If the provision relating to a navigable river should be interpreted as referring to a river navigable in fact, that is, one susceptible of being used in its ordinary condition as a highway for commerce, over which trade and travel may be conducted in the customary modes of trade and travel on water as decided by the United States supreme court in *Brewer-Elliott Oil & Gas Co. et al. v. United States* (43 Sup. Ct. Rep. 60), it must still be held that the act could hardly ever have any application outside of Wyandotte county. But apart from this consideration the act is so plainly local and special in its application as to be obnoxious to, and evasive of, the limitation in section 17 of article 2 of the constitution. Being special in character, it also

offends section 1 of article 12 of the constitution, inasmuch as it takes corporate rights from Kansas City in respect to the control of the highways within the limits of the city. Special laws in some instances may be enacted, but this may only be done where a general law cannot be made applicable. In the first instance the legislature must determine that question, but under the amendment of the constitutional provision the determination of whether an act is repugnant to the limitation in that its purpose may be accomplished by a general law, is one for the judiciary.

In the recent case of *Patrick v. Haskell County,* 105 Kan. 153, 181 Pac. 611, wherein many cases are cited, it was said:

"While it is the duty of the courts to uphold laws passed by the legislature, yet it is just as much the duty of the courts to uphold the constitution. If the statute now under consideration be approved, and the principle followed in declaring that approval is observed in the future, the amendment concerning special laws will be of no effect, for the reason that any school district, any township, any city, any county in the state, desiring to accomplish anything not authorized by the general law, can, by the system that has been followed in framing the present act, secure the enactment of a law, general in form, but special in effect, enabling it to accomplish its purpose. Special laws, instead of being direct, will become general in form, but indirectly special, and all the evils of special legislation that brought about the amendment to section 17 of article 2 will be revived." (p. 159; see, also, *The State, ex rel., v. High-school District,* ante, p. 616.)

Holding the act to be in conflict with the constitution, it follows that the judgment of the district court must be affirmed.