E. Eichholtz *et al.* v. D. H. Martin, *as County Clerk of Labette County, et al.*

HIGH SCHOOL, *Establishment of—Special Act, Valid.* Chapter 140 of the Laws of 1893, "An act to establish a county high school in Labette county, Kansas," does not contravene § 17 of article 2 of the constitution, which provides that laws of a general nature shall have a uniform operation throughout the state, and that no special laws shall be enacted where a general law can be made applicable; nor is it in conflict with § 2 of article 6, which authorizes the legislature to establish a uniform system of common schools and schools of a higher grade.

*Error from Labette District Court.*

ACTION by *Eichholtz* and others against *D. H. Martin*, as county clerk of Labette county, and others, to restrain the collection of certain taxes. Judgment for defendants. Plaintiffs bring the case here. The facts appear in the opinion herein, filed June 9, 1894.

*F. H. Atchinson, W. F. Schoch,* and *T. N. Sedgwick,* for plaintiffs in error; *Kimball & Osgood,* of counsel.

*Nelson Case,* for defendants in error.

The opinion of the court was delivered by

JOHNSTON, J.: At the recent session of the legislature, an act was passed providing for the establishing and maintaining of a high school at Altamont, in Labette county. (Laws of 1893, ch. 140.) On April 10, 1893, the board of county commissioners of Labette county, in pursuance of the act, appointed trustees of such high school, who qualified and ever since have been acting as such trustees. On May 31, 1893, these trustees recommended to the board of county commissioners that a three-mill levy be made upon all the property in the county for the year 1893, for building purposes, and a one-mill levy for expenses and teachers' wages. On August 7, 1893, the recommendation of the board of trustees, which had been certified to the board of county commissioners, was

approved in part, and a levy of $1\frac{9}{10}$ mills on the dollar was levied to create a fund with which to erect a high school building, and a further levy of six-tenths of a mill was made for the payment of teachers' wages and incidental expenses. The board of trustees of the county high school, in connection with the county superintendent of public instruction, selected a site for the high-school building, and have taken steps toward the establishment and maintenance of a high school at Altamont. No legal notice has ever been given of an election to establish a high school in Labette county, and no election has ever been held for that purpose, and the board of trustees and other defendants have no authority in law for their acts in the premises beyond what is conferred by chapter 140 of the Laws of 1893. The plaintiffs, who are taxpayers, brought this action to prevent the collection of the taxes levied, claiming that the act under which the high school was established and the taxes levied was unconstitutional and void. The court sustained a demurrer to the petition, and upheld the validity of the act.

The first objection is that, as we have a general law providing for the erection and maintenance of county high schools, no necessity exists for creating one in Labette county by special legislation, and therefore that the special act in question violates the constitutional provison which requires that general laws shall have a uniform operation, and forbids the passage of a special law where a general one can be made applicable. (Const., art. 2, § 17.) The purpose and effect of the act is to extablish a high school at Altamont, in Labette county, without obtaining the consent of the electors of the county, as provided in the general law relating to the establishment and maintenance of county high schools. Under the general law, a county having a population of 6,000 inhabitants, or over, may establish a county high school for the purpose of affording better educational facilities for pupils who are more advanced than those attending district schools, and for persons desiring to fit themselves for the vocation of teaching. Upon a petition of one-third of the electors of a

county, requesting the establishment of a high school at a designated place in the county, an election may be had upon the proposition, and if a majority of the electors vote in favor of the proposition, the school is established and provision made for its maintenance. (Laws of 1886, ch. 147.) For some reason, the legislature determined that the general law, which left to the electors the discretion of determining whether a high school should be established, was inapplicable to the conditions existing in Labette county.

The old question so often raised is again presented: Was it competent for the legislature to determine whether a general law could be made applicable, and whether a special law was necessary? If the question were a new one, the writer of this opinion would be inclined to the view that the courts should determine in each case whether this constitutional restriction had been violated or not; but the question has been put at rest by a long series of decisions holding that the decision of the question is exclusively for the legislature, and not for the courts. This provision of the constitution and the decisions on the same were reviewed at considerable length in the recent case of *Elevator Co. v. Stewart*, 50 Kas. 378, where it was said that

"Commencing with the case of *The State, ex rel., v. Hitchcock*, 1 Kas. 178, this court has uniformly held that the legislature has the power, in its discretion, to pass special laws, although adequate laws upon the same subject might be enacted, and although in fact such general laws have already been enacted, and are at the time in full force and effect, and although such special acts might have the effect to limit the operation of existing general laws or existing laws of a general nature, then having a uniform operation throughout the state."

From an examination of the decided cases referred to in *Elevator Co. v. Stewart*, supra, as well as others that are not mentioned, it will be seen that the special act in question is substantially similar to many others which have been upheld in this court. From the multiplicity of special acts recently enacted, it appears that the constitutional limitation has little

force; but, in view of the length of time that the rule has been established and followed, we are all of the opinion that the question should be regarded as settled until the people shall change the constitution, and declare that the decision of the lawmaking power in respect to the necessity for special laws is subject to judicial review.

The contention that the act in question should be excepted from the general rule because it is not complete and independent in and of itself cannot be sustained.    It simply provides for establishing a county high school, which, when established, is subject to the provisions of the general law.    In this respect it is substantially like most of the special legislation which has been enacted, and the validity of which has been sustained. Nor can we sustain the objection that the special act violates § 2 of article 6 of the constitution, which authorizes the legislature to establish "a uniform system of common schools, and schools of a higher grade, embracing normal, preparatory, collegiate and university departments."    If the phrase, "uniform system," has any application to schools of a higher grade, we still fail to see that the special act is obnoxious to this constitutional provision.

*High school, establishment of—special act, valid.*

The high school in Labette county, created by the special act, conforms to the uniform system of high schools throughout the state, and is maintained and governed in accordance with the provisions of the general law.    The constitution does not inhibit the passage of special laws creating schools of a higher grade, but does no more than to require that, when established, either by general or special law, they shall constitute a uniform system.    It is the system that must be uniform, and not the method of establishing the schools which constitute the system.    We are referred to *The State v. Powers,* 38 Ohio St. 54, as an authority that a special act establishing a school trenches upon a constitutional provision like that under consideration by destroying the uniformity of the system. That decision, which was made by a divided court, tends to sustain that view, but the same question was reconsidered in

a later case and the former decision was overruled by a united court. (*The State, ex rel. v. Shearer*, 46 Ohio St. 275.)

It is finally urged that the act is void because it was not read by sections upon its final passage, and because the yeas and nays were not taken and entered upon the journal on the final passage of the act, as required by the constitution. It is contended that there was an omnibusing of several local bills, including the one under consideration; but nothing is presented to establish this claim except the fact that the house journal shows that at a certain session of the legislature a number of local bills were passed, and that the affirmative and negative votes upon each of them were the same. This coincidence is certainly insufficient to impeach the truth of the enrolled statute and of the journals. The rule is, that the enrolled statute is conclusive evidence of the regularity of its passage and of its validity, unless the journals of the legislature show clearly, conclusively and beyond all doubt that the act was not regularly and legally enacted. It has been held that

"If there is any room to doubt as to what the journals of the legislature show, if they are merely silent or ambiguous, or if it is possible to explain them upon the hypothesis that the enrolled statute is correct and valid, then it is the duty of the courts to hold that the enrolled statute is valid." (*The State, ex rel., v. Francis*, 26 Kas. 731; *In re Vanderberg*, 28 id. 254; *Weyand v. Stover*, 35 id. 545.)

The House Journal of 1893, at page 430, shows that the yeas and nays were taken on the final passage of the act, and that 90 votes were cast in favor of the measure, while 3 votes were cast against it, and clearly tends to support and sustain the validity of the enrolled statute.

As none of the objections urged against the validity of the act can be sustained, the judgment of the district court sustaining the demurrer to the petition will be affirmed.

All the Justices concurring.