No. 31,323.

A. J. MURRAY, *Plaintiff*, v. HOWARD PAYNE, as City Clerk, etc., *Defendant*.

(21 P. 2d 333.)

Opinion filed May 6, 1933.

*H. S. Roberts* and *Joseph A. Lynch*, both of Kansas City, for the plaintiff.

*Alton H. Skinner, George H. West* and *John C. O'Brien*, all of Kansas City, for the defendant.

The opinion of the court was delivered by

BURCH, J.: The action was one of mandamus, commenced in this court on March 16, 1933, to compel the city clerk of Kansas City to carry out arrangements for holding a city election, contrary to an act which took effect March 13, 1933, dispensing with holding the election. The cause was heard on the application for the writ. The writ was denied, and the reasons for that judgment may be stated as briefly as possible.

·The city is a city of the first class, operating under the commission form of government. In February, 1923, the following statute became effective:

"That in all cities of the first class having a population of more than one hundred thousand now operating, or which may hereafter operate, under the commission form of government, there shall be elected five commissioners as follows: A mayor commissioner, commissioner of waterworks and street lighting, commissioner of finance and revenues, commissioner of streets and public improvements, and a commissioner of parks and public property. And all five commissioners shall be elected in April, 1923. The three commissioners receiving the largest number of votes cast at said election shall be elected for

a term of four years and the other two shall be elected for a term of two years. Thereafter and in April, 1925, there shall be two commissioners elected for a term of four years; and thereafter all commissioners elected shall hold their offices for a term of four years." (R. S. 13-1707.)

When this statute was enacted, it applied to the city of Kansas City only. On February 10, 1933, the city clerk commenced publication of notice of a primary election to nominate candidates for city offices to be voted for at the city election to be held April 4. The officers to be elected were one commissioner of parks and public property, one member of the board of public utilities, and three members of the board of education. Plaintiff was a candidate for nomination and election to the office of commissioner of parks and public property, to succeed an incumbent whose term of four years would expire following the election on April 4. On March 13 the following statute took effect:

"AN ACT providing for uniformity in the commencement of terms of office, avoiding expense of unnecessary elections and providing for quadrennial elections in certain cities, dispensing with the biennial election in 1933 in such cities, and preventing the occurrence of vacancies that might result therefrom.

"Be it enacted by the Legislature of the State of Kansas:

"SECTION 1. That in all cities of the first class having a population of more than one hundred and twenty thousand (120,000) operating under the commission form of government, wherein by law biennial elections are now provided for, and wherein the regular term of all elective officers is four years, city elections shall be hereafter held every four years only, beginning with the year 1935.

"SEC. 2. That all city commissioners, members of boards of public utilities, and members of boards of education in the cities governed by section 1 of this act, whose terms of office would expire in 1933, shall continue to hold office for two years beyond the expiration of their present terms.

"SEC. 3. This act shall take effect and be in force from and after publication in the official state paper." (Laws, 1933, ch. 135.)

The statute, if valid, would necessarily frustrate the hopes of gentlemen ambitious to serve the city, and plaintiff denounced the statute as follows:

"That said enactment did not and does not express the sentiment of the people of Kansas City, Kan., and that said enactment, if permitted and allowed to remain upon the statute books, will disfranchise more than sixty thousand voters of said city; that it is oppressive, un-American, contrary to law and public policy; tyrannical in its results, and destroys the functions of government . . ."

Plaintiff contended the title of the act is defective. The court regards the title as sufficient.

Plaintiff contended the act is a piece of special legislation relating to one city only, the city of Kansas City, and consequently the act violates section 17 of article 2 of the constitution, which reads:

"All laws of a general nature shall have a uniform operation throughout the state; and in all cases where a general law can be made applicable, no special law shall be enacted; and whether or not a law enacted is repugnant to this provision of the constitution shall be construed and determined by the courts of the state."

The constitutional provision quoted does not prohibit special legislation. Only laws of a general nature shall have uniform operation throughout the state, and when a general law cannot be made applicable, special legislation to accomplish desired ends is permissible. Whether a law is repugnant to the provision of the constitution is a matter to be finally determined by this court. The question is usually one of classification, and in such cases the court must determine whether sufficient differences exist to make distinctions substantial. In doing this the court must consider the nature and purpose of the legislation and the conditions and circumstances under which it was enacted.

In this instance, the statute now applies and was intended now to apply to but one city, the city of Kansas City. It is the only city in the state having a population of more than 120,000, operating under commission or other form of government, and it is not likely any other city can attain the required population before 1935. There, however, is that city, in a distinct class by itself. It so happened that in this particular year there were to be a primary election to nominate candidates and then an election to elect just two city officers and three members of the board of education. The city budget, made in August, 1932, appropriated $16,975 to operate the election machinery. Unofficial estimates of the actual cost of the two elections were greater. The expense of conducting an election in a large city is proportionately greater than in a smaller city, and just now municipal expenditure is a subject of the gravest concern.

At the time this is written, the premiers of England and France are in Washington, conferring with the president of the United States upon measures for relief of world economic conditions. The congress of the United States is in special session, dealing with the subject of economic conditions in this country. At the session of the legislature at which the act in question was passed, the governor sent to the legislature a special message which reads in part:

"In my recent message to you I advised that I would discuss certain matters affecting our state in a special message. Any program of economy must consider our many state departments and branches of government, and analyze their organization.

"The government of Kansas should not spend a dollar if fifty cents will do the job, and before we spend the fifty cents, we should ask ourselves, 'Do we need it? Can we afford the price?'

"Our most sincere efforts are needed to do away with waste, extravagance, duplication, and unnecessary service.

.   .   .   .   .   .   .   .   .   .   .   .   .   .   .

"It is my duty, under our constitution, among other things, to recommend such measures for your consideration as I believe are expedient and for the best welfare of our government. In a time of business chaos, such as now exists, we must be willing to face conditions as they are, and to coöperate in cutting out unnecessary expenditures and in eliminating lost motion, slack and extravagance. Government must continue, but we must carry forward on a solid basis of economy. We are now forced to make decisions on the merits of our expense accounts. Government, generally speaking, has but one source of income: That is taxation. As our expenses have increased the rate of taxation has climbed until it has become a tremendous burden upon real property.

"Every business and every person in the nation has been compelled to reduce overhead and to retrench. The state and its subdivisions must do likewise. . . ."

The conditions under which the legislature met were unprecedented in modern history. As the governor said, the time is one of business chaos, and the local situation to which the act applied was unique. Therefore, if the legislature chose to heed the governor's recommendation, and on the score of economy alone to dispense with the city election of 1933 in the city of Kansas City, this court declines to hold that the legislature transcended the limits of its constitutional power.

The legislature has undoubted power to declare whether city elections shall be held annually or biennially or quadrennially, to change from one kind to another as it considers the public interest and welfare require, and section 1 of the act is perfectly valid.

Section 1 accomplished the legislative purpose. How the city government should continue to function until the election of 1935, was an incidental and collateral matter, and was dealt with in section 2. Whether present officers should hold over was not of the substance of the act, and the court holds section 1 to be valid, whatever may be said of section 2.

The foregoing disposes of plaintiff's present concern about the

statute. However, the validity of section 2 was fully briefed and argued. Indeed, the briefs and arguments were chiefly devoted to validity of section 2, and a majority of the court felt that, to save trouble and expense of future lawsuits, the views of the court concerning validity of the entire act should be expressed.

The constitution contains the following provisions:

"The tenure of any office not herein provided for may be declared by law; when not so declared such office shall be held during the pleasure of the authority making the appointment, but the legislature shall not create any office the tenure of which shall be longer than four years." (Const. art. 15, § 2.)

The legislature created the office of commissioner of parks and public property. At first the term of office was two years. Then the term was made four years. In 1929 a commissioner was elected for the term of four years. His term expired in April, 1933. Plaintiff's contention is the statute extended his term two years more, with the result that the legislature has attempted to create an office the term of which is six years.

The statute of 1933 did not create any office. The office was already in existence. The term of office was four years, still is four years, and the statute contemplates it will continue to be four years. What happened was that by cancelling the election in 1933, there is to be an interval, not a part of any term, between April, 1933, and April, 1935. Such an interval is given various names—interim, interregnum, exceptional term, etc. "Exceptional term" is a misnomer here, because no term of any length is involved.

A term of office is one thing. An office holder is something else. The incumbent may go out, nobody come in, and the term goes on. If a successor is appointed or elected, he fills the unexpired portion of the term. A term may come to an end, but the incumbent may rightfully carry on. The term of the commissioner of parks and public property, elected in 1929, expired in 1933. No other term began or will begin until after the city election in 1935, and whoever exercises the functions of the office until 1935 will not do so as the holder of any term, or extension of term, or part of a term.

When there is an interval between the end of a term and the beginning of another, the public business must go on without interruption. Some one must do the business in the capacity of a public officer. The constitution provides that executive officers of the state shall hold for a term of two years and until their successors are elected and qualified; that judicial officers shall hold until their

successors shall have qualified; and that county and township officers shall hold for a term of two years and until their successors are qualified. (Art. 1, § 1; art. 3, § 12; art. 4, § 2.) The prevailing rule in the United States is that in the absence of constitutional or statutory provision to the contrary, express or implied, an officer is entitled to hold until his successor is chosen and has qualified. (46 C. J. 968, § 110.) A constitutional provision of this state that no person shall hold the office of sheriff or county treasurer for more than two consecutive terms, was held to express a definite public policy which disqualified a county treasurer from holding over beyond his second consecutive term. (*Adkinson v. Noonan*, 110 Kan. 335, 203 Pac. 694.)

The general law relating to cities of the first class provides that the term of all elective officers shall be two years and until their successors are elected and qualified. (R. S. 13-307.) The general commission form of government law provides for the election of a mayor and commissioners who shall hold their offices for a term of two years and until their successors are elected and qualified. The commission form of government statute specially applying to Kansas City (R. S. 13-1707) says "All commissioners elected shall hold their offices for a term of four years." Plaintiff makes much of the omission of the usual provision for holding over.

The statute provided for four-year terms instead of two-year terms. All five commissioners were to be elected in 1923. The statute then assigned to three of them four-year terms, and to two of them two-year terms. At the expiration of the two-year terms, two commissioners were to be elected for four-year terms, and the language of the statute is that "thereafter all commissioners elected shall hold their offices for a term of four years." There is no implication here that the legislature thought anything about holding over, much less that it intentionally added another specialty to the act, abrogated the rule relating to public officers generally, and prohibited holding over in Kansas City.

The result of the foregoing is that if section 2 had not been inserted in the act, incumbents would hold over until the next election in 1935. In essence and effect what the legislature said in section 2 was that to fill the hiatus between the ending of existing terms in 1933 and the beginning of the next terms in 1935, present incumbents should hold over—"continue in office." The legislature might have

made other provision, but the provision it did make was within its constitutional power.

"For the purposes named [uniformity of terms, dispensing with unnecessary elections] the legislature has constitutional power to readjust the commencement of official terms by postponing elections for a reasonable time, and provisions for the filling of the offices during the interval between the end of one regular term and the commencement of another are not invalid." (*Wilson v. Clark*, 63 Kan. 505, syl. ¶ 2, 65 Pac. 705.)

In the opinion it was said:

"It will be observed that in some of the cases cited the vacancies or exceptional terms have been filled by provisional appointments, and in others that the incumbents have been permitted to hold over until the beginning of the regular term. It is immaterial whether the interval between the regular terms is called a vacancy, an interregnum, or an exceptional term. Whatever it is, there is no doubt power in the legislature, under the authorities cited, to make provision for the occupancy of the office until the beginning of the next regular term, . . ." (p. 514.)

The office of justice of the peace is a constitutional office, the term of which is two years, fixed by the constitution. (Art. 3, §§ 1, 9.) Justices of the peace are township officers, and previous to 1875 township officers were elected in April. In that year a statute was enacted providing that township officers should be elected at the general election in November, and the statute contained the following provision:

"*Provided,* That the several township officers whose terms of office would expire upon the election and qualification of their successors in office at the April election, A. D. eighteen hundred and seventy-five, shall continue to hold their several offices until their successors are elected and qualified at the election provided for in the first section of this act." (Laws 1875, ch. 92, § 1.)

The case of *Jones v. Gridley*, 20 Kan. 584, related to a contest over the office of justice of the peace. In the opinion the court said:

"The act of 1875 expressly continued the terms of the township officers, expiring upon the election and qualification of their successors in April, 1875, till after the township election in November of that year; and those township officers, whose term of office, prior to the adoption of that statute, would have expired in April, 1876, were by said act necessarily continued in office until their successors were elected and qualified at the election held in November of that year." (p. 587.)

The question here involved was not considered. As indicated, the question of power of the legislature over postponement of elections was considered in the case of *Wilson v. Clark*. The opinion was written by then justice, now Chief Justice Johnston, and the

statute of 1875 and the decision in *Jones v. Gridley* were cited to illustrate exercise of the legislative power.

· Because of the exceptional and purely provisional nature of the arrangement for conduct of the public business during an interval between the ending and commencement of terms created by change in time of election, holdover provisions are in no sense "appointments," and do not infringe on the power of appointment to fill vacancies.

Without pursuing the subject further, a majority of the members of the court hold that when an election of city officers is postponed, as by the act under consideration, the legislature may provide that incumbents whose terms would have expired if the election had been held as usual, may continue in office until the election provided for is held.

As indicated in the syllabus of the decision in *Wilson v. Clark*, the postponement must be reasonable. In the case of the justice of the peace referred to above, the postponement of election was from April to November of the same year. In the case of *Wilson v. Clark*, the postponement was for one year. In the case of *Jordan v. Bailey*, 37 Minn. 174, municipal judges were elected in 1883 for terms of four years and until their successors were elected and qualified. In 1885, a statute was enacted abrogating provision for election in 1887, and providing for an election in 1889. The statute made the terms of judges uniformly six years. It was held the postponement with respect to judges whose terms expired in 1887 was not unreasonable, and they were entitled to hold until 1889. In this instance, the postponement was to the only practicable time, the next election; a time within which it is hoped the exigencies necessitating postponement will disappear.

It is conceivable that a legislature not having the fear of God before its eyes, but being moved and seduced by the instigation of the devil, as the court contemplated in the case of *People, ex rel., v. Bull*, 46 N. Y. 57, might undertake to abuse its power, in order to defeat popular elections, entrench favorites in office, etc. The integrity and sincerity of the house and senate which passed the bill under consideration, and of the governor who signed it, are above reproach.

For the foregoing reasons, the writ was denied.

HARVEY, J., dissenting.

THIELE, J. (dissenting) : As to paragraphs 1 and 2 of the syllabus and the corresponding parts of the opinion I assent. As to paragraph 3 of the syllabus I dissent. Our constitution specifically provides for a *tri partite* form of government—a legislature, an executive, and a judiciary. Appointment to office is intrinsically and essentially an executive act. Section 2 of the act in question is an appointment to office by the legislature and therefore unconstitutional.