No. 41,105

STATE OF KANSAS ex rel. JOHN ANDERSON, JR., Attorney General, and JOHN W. PLUMMER, County Attorney of Harvey County, Kansas, *plaintiff,* v. E. H. HODGSON, JACOB J. SCHRAG, WILBUR WILGAND, RAY JUHNKE, GUS A. UNRUH, ERNEST A. UNRUH, JOHN HUEBERT, ORVILLE WEAR, LEE COX, DON WILLIAMS, AILIFF NEEL, JOHN ADRIAN, B. C. GRADINGER, JACK COMES, and DON GRIMWOOD, The Board of Directors, and ELMER H. GOERING, Executive Secretary of the Little Arkansas River Watershed District, a Corporation; and WANDA H. BENEDIX, As County Treasurer of Harvey County, Kansas, *defendants.*

(326 P. 2d 752)

Opinion filed June 7, 1958.

*John Anderson, Jr.,* Attorney General, of Topeka, argued the cause, and *Ralph Gilchrist,* County Counselor, of Wichita; *Charles D. Johnson,* of Mc-Pherson; *Rodger H. Morse,* of Marion; *R. E. Miller,* of Ellsworth; *John Alden,* of Hutchinson; *John W. Plummer,* of Newton, and *Granville M. Bush,* of Lyons, all County Attorneys, and *Fred N. Six,* Assistant Attorney General, of Topeka, were with him on the briefs for plaintiff.

*Kenneth G. Speir,* of Newton, argued the cause, and *Vernon A. Stroberg, Herbert H. Sizemore, Richard F. Hrdlicka,* of Newton; *J. Rodney Rhoades* and *George R. Lehmberg,* of McPherson, and *Frederick Woleslagel,* of Lyons, were with him on the briefs for defendants.

The opinion of the court was delivered by

FATZER, J.: This is an original proceeding in quo warranto brought by the attorney general and the county attorney of Harvey County to determine the constitutionality of an act of the legislature creating and establishing the "Little Arkansas River Watershed District" (G. S. 1957 Supp. 24-1301-1305 [Ch. 227, L. 1957]). Upon application of the county attorneys of Ellsworth, Reno and Rice Counties and the county counselor of Sedgwick County, this court permitted them to intervene as parties plaintiff.

As established by the legislature, the district is comprised of approximately 821,000 acres in portions of Ellsworth, Rice, McPherson, Marion, Reno, Harvey and Sedgwick Counties. The boundaries were established by the act and the land included therein was described by section, township and range. As shown by the following map, the district (shaded area) consists generally of the

watershed area of the Little Arkansas River and its tributaries, however, as indicated by the map and provided in the act, the corporate limits of the cities of Newton and McPherson were specifically excluded from the district. As will be noted, that portion of the district within Ellsworth and Marion Counties, while included on the map, is not designated as being located in those counties.

The challenged act is summarized and quoted as follows: (All reference to the act is directed to G. S. 1957 Supp. unless otherwise noted.) The title reads,

"AN ACT creating and establishing the 'Little Arkansas river watershed district' as an instrumentality and agency of the state of Kansas."

Recitals in the act following the title and preceding the enacting clause read:

"Whereas, In order to promote the general welfare of the state of Kansas, it is hereby declared necessary to create and establish watershed districts, as bodies politic and corporate and as instrumentalities and agencies of the state of Kansas, for the purpose of implementing and executing the declared policy of the state of Kansas to conserve and develop the soil and water resources of the state of Kansas, and

"Whereas, such districts must: (1) Comprise all or a reasonable portion of a natural drainage basin; (2) be large enough to be effective, and small enough to be manageable; and (3) be governed by general law; and

"Whereas, the proposed 'Little Arkansas river watershed district' meets each and every one of the above requirements, and should be created and established by act of the legislature. . . ."

Pertinent language of the act is quoted:

"24-1301. There is hereby created and established a body politic and corporate (and as an instrumentality and agency of the state of Kansas) to be known as the 'Little Arkansas river watershed district.'

"24-1302. Said district shall include and be comprised of the following area:" (Here follows a description by section, township and range of approximately 821,000 acres comprising the district.)

"24-1303. Within said 'Little Arkansas river watershed district' the following subdistricts thereof are hereby established:" (Here follows a description by section, township and range of nine subdistricts which generally comprise the watershed area of each tributary of the Little Arkansas River, except the corporate limits of the cities of Newton, McPherson and Burrton, which were specifically excluded from their subdistrict or subdistricts.)

"24-1304. Such district shall be governed by, and be operated in compliance with, the general laws of the state of Kansas relating to watershed districts and other appropriate acts."

24-1305 provides for the organization of the district to be completed within a date not more than sixty (60) days after the effective date of the act.

On June 12, 1957, the meeting to organize the district was held at Halstead, and the defendant board of directors were duly elected. On August 2, 1957, the directors met and adopted a budget of revenues and expenditures for 1958, resulting in an ad valorem tax levy of 1.77 mills on the taxable property of the district. When the taxes became due, only a few paid the levy under protest, and of those few, only the Continental Oil Company and the Continental Pipe Line Company filed suits pursuant to G. S. 1949, 79-2005 to recover the taxes so paid.

Pursuant to 24-1219 the defendant directors issued and sold to certain banks in Harvey County no-fund warrants of the district in the amount of $80,000 to defray initial organizational and administrative expenses, which are currently outstanding and unpaid. At

the present time sufficient taxes have been collected by the treasurers of the counties within the district with which to retire more than 50 percent of the no-fund warrants.

At the commencement of the action, this court granted restraining orders prayed for in the amended petition, restraining the defendant officers of the district from collecting or disbursing any monies received, and the treasurer of Harvey County from collecting monies from any county in the district and from disbursing any money to any officer of the district.

Plaintiff first asserts the act is a special law where a general law can be made applicable and is therefore repugnant to Art. 2, § 17 of the Constitution of Kansas which reads in part:

"All laws of a general nature shall have a uniform operation throughout the state; *and in all cases where a general law can be made applicable, no special law shall be enacted; and whether or not a law enacted is repugnant to this provision of the constitution shall be construed and determined by the courts of the state:* . . ." (Emphasis supplied.)

Does the act violate Art. 2, § 17 of the Constitution? Manifestly an act of the legislature which creates and establishes a watershed district by legislative fiat, fixing its boundaries and specifically describing the land therein by section, township and range so as to constitute one compact geographic area, is a special law (*Eichholtz v. Martin,* 53 Kan. 486, 36 Pac. 1064; *Gardner v. The State,* 77 Kan. 742, 95 Pac. 588; *The State v. Nelson,* 78 Kan. 408, 96 Pac. 662; *Howard v. McIntosh,* 118 Kan. 591, 235 Pac. 1034). The correctness of this conclusion is supported by the defendants frank concession that the act "is openly and without doubt 'special' legislation," and that the district is governed by the Watershed District Act (24-1201 - 1221), a general law in effect at the time it was enacted.

The act being special, we are required to determine whether a general law could have been made applicable. It is well settled that whether a special act is repugnant to the second clause of Art. 2, § 17 shall be determined by the courts. In a recent decision on this question, *Water District No. 1 v. Robb,* 182 Kan. 2, 318 P. 2d 387, this court said:

"Prior to the 1906 amendment of the Constitution this court adhered generally to the rule that it was for the legislature to determine whether a special law was justified. The evils inherent in the system as it existed prior to the amendment of the Constitution were discussed in *Anderson v. Cloud County,* 77 Kan. 721, 95 Pac. 583. After the Constitution was amended the legislature

no longer had the power to finally determine either that a proposed law would have uniform operation throughout the state or that a local condition exists which requires a special law, and it became the duty of the courts to determine the constitutionality of an act *without reference to anything the legislature had declared, either in the act in question or in other acts.*" (1. c. 11.)   (Emphasis supplied.)

See, also, *Anderson v. Cloud County,* 77 Kan. 721, 95 Pac. 583; *Gardner v. The State,* supra; *The State v. Nelson,* supra; *Murray v. Payne,* 137 Kan. 685, 21 P. 2d 333; *State, ex rel., v. School District,* 140 Kan. 171, 34 P. 2d 102.

The effect of the amendment of 1906, with respect to the second clause of the section, was to transfer to the courts the "discretion" theretofore vested in the legislature of the relative propriety of whether a general law could be made applicable, *i. e.,* "was more expedient," and to make the question a judicial one, without an express criterion as to "where a general law can be made applicable." The "repugnant" clause does not prohibit special acts per se, for this, if no general law can be made applicable, is permissible (*Higgins v. Johnson County Comm'rs,* 153 Kan. 560, 112 P. 2d 128; *Murray v. Payne,* supra; *Water District No. 1 v. Robb,* supra).   Neither is it directed to a general law, for a general law is not prohibited. Obviously, it is directed to the question whether the subject matter of the act, whether general or special in form, is proper for special legislation (*Rambo v. Larrabee,* 67 Kan. 634, 73 Pac. 915; *Richardson v. Board of Education,* 72 Kan. 629, 84 Pac. 538; *Water District No. 1 v. Robb,* supra; *Higgins v. Johnson County Comm'rs,* supra).

Courts are not concerned with the wisdom, necessity or merits of legislation, and whether an act is repugnant to the section is to be determined as a judicial question.   The problem presented is not simple and there seems to be no easy answer to it.   In the past it has been found expedient to leave the question of whether a general law can be made applicable, open, to be determined upon the circumstances of each case.   In this respect our decisions have not been entirely consistent and confusion on the subject has inevitably grown out of the effect of the amendment 'in making a judicial question out of a political one.   If we follow *Panhandle Eastern Pipe Line Co. v. Miami County Comm'rs,* 151 Kan. 533, 99 P. 2d 828, in which it was conceded the act was special, all laws special in application and operation would be repugnant to the section. This would clearly violate the section.   On the other hand, in *Higgins v. Johnson County Comm'rs,* supra, it was said:

"Was the end to be accomplished legitimate? If so, the act may be supported as valid special legislation, although formulated in language ordinarily applicable to a general law. . . ." (1. c. 565.)

This rule, when analyzed, would indicate that courts may exercise discretion in passing upon the expediency, wisdom and perhaps the policy of legislation. In other words, that courts may substitute their judgment for that of the legislature as to what is, or is not, a legitimate and expedient policy in a given situation. Again, in *State, ex rel., v. French,* 130 Kan. 464, 286 Pac. 204, we said:

". . . Conditions with reference to the classification which it (the legislature) desired to make were solely matters for legislative determination. . . ." (1. c. 467.)

This rule, if followed, would amount to nothing less than striking the amendment out of the section, and reviving the evils of special legislation which brought about its adoption. In *Murray v. Payne,* supra, it was said:

"In doing this (considering the sufficiency of the classification) the court must consider the nature and purpose of the legislation. . . ." (1. c. 687.)

The court there indicates it looks to the subject matter of the act under consideration as one of the criteria of validity. .

What is the criterion for valid special legislation? To restate the question, what are the standards to guide courts in determining where a general law can be made applicable? It would seem virtually impossible to formulate a general rule for determining the question, but it must be borne in mind that the second clause of the section was intended to preserve uniformity and consistency in the statutory enactments of the state, to eradicate special legislation involving a multiplicity of laws, and to require that general laws be enacted whenever possible to do so (Proceedings and Debates of the Wyandotte Constitutional Convention of 1859, p. 133; 82 C. J. S., Statutes, § 157, p. 264; *State, ex rel., v. Board of County Comm'rs,* 173 Kan. 367, 245 P. 2d 1181). In 50 Am. Jur., Statutes, § 57, p. 79, the rule is stated:

"There are cases, however, in which the constitutional inhibition against a special law, where a general law can be made applicable, have been enforced by the courts. Under such constitutional provision, purposes which can be accomplished by general legislation cannot be made the subject of special legislation. The provision requires the legislature to treat alike all who are in the same condition, to make the law apply to the whole class, and not to a part thereof. Under these rules, the constitutional prohibition of the enactment of special laws where a general law can be made applicable, has been

held to apply where there was no showing of local conditions requiring special treatment, and where there was in force a statute of state-wide operation, on the subject with which the special act seeks to deal on behalf of the particular county."

By taking a composite view of the decisions of this court to determine "where a general law can be made applicable," the following guides appear evident: (1) where the validity of an act is challenged, the rule of statutory construction which makes it the duty of the courts to uphold the law, if it is possible to do so, has no application however much that principle may apply to objections falling under other provisions of the constitution (*Anderson v. Cloud County*, supra); (2) that consideration be given the subject of the act and its operation and effect, without regard to any legislative assertion thereon (*Anderson v. Cloud County*, supra; *Water District No. 1 v. Robb*, supra); (3) courts must determine the question by judicial notice of facts and conditions lying within the common public knowledge, and parol evidence is not admissible (*Anderson v. Cloud County*, supra; *Gustafson v. McPherson County*, 88 Kan. 335, 128 Pac. 186; *State, ex rel., v. School District*, supra); (4) if a local situation exists necessitating special legislative action, and particular and unique facts make a general law inapplicable, a special law may be enacted (*Water District No. 1 v. Robb*, supra, Syl. ¶ 2, p. 12); (5) where the object in view can be accomplished under a general law without "public injury," the legislature is not at liberty to enact a special law (*State, ex rel., v. Hitchcock*, 1 Kan. 178, 184; *Rambo v. Larrabee*, supra). While the Hitchcock case was decided prior to the amendment of 1906, the rule there stated to be binding upon the legislature would now appear to be applicable to the courts by analogy. In the opinion it was said:

"It is not the purpose of the constitution to compel the legislature to accomplish an act of local or special legislation beneficial to one person or locality only, through a general law, *which might, in their opinion, result in damage when applied to other persons or localities.* . . ." (l. c. 185.) (Emphasis supplied.)

(6) although not conclusive in itself, the existence of a general law on the subject to which a special act is directed serves "as an apt illustration of the adaptability of a general law on the subject, and as an argument against the necessity for a special law" (*Anderson v. Cloud County*, supra), and (7) although not here applicable, if a

law general in form presently applies to one governmental unit, containing a limitation of time in which there can be operation under it, and there is little or no probability it would ever affect any other governmental unit, it is a special law (*Barker v. Kansas City*, 149 Kan. 696, 88 P. 2d 1071).

The subject matter of the challenged act, while dealing specifically with the creation and establishment of the district, relates generally to water management and soil conservation. This subject is common to all the people of the state whether landowners, tenants who farm the land, or inhabitants of towns and cities located in the various natural drainage basins. The title and recitals of the act indicate a legislative finding that a general law could not be made applicable; that the creation and establishment of the district would further the public policy of the state with respect to water management and soil conservation, and that the particular special act was necessary to carry out that policy. Such a determination by the legislature is not final. This court is enjoined to give consideration to the subject matter of the act and its operation and effect, irrespective of a legislative assertion or finding, in determining whether it is proper for special legislation (*Anderson v. Cloud County*, supra; *Water District No. 1 v. Robb*, supra).

The defendants did not plead facts why the watershed area of the Little Arkansas River and its tributaries is so unique and special as to render a general law inapplicable. Nonetheless, we are required to take judicial notice of facts and conditions lying within the common public knowledge; of the history of the country, and of what the members of the legislature ought to have known when the act was passed, to determine whether a general law could be made applicable to the subject matter (*City of Topeka v. Gillett*, 32 Kan. 431, 436, 4 Pac. 800; *Anderson v. Cloud County*, supra; *Gustafson v. McPherson County*, supra; *State, ex rel., v. School District*, supra).

It is a matter of common public knowledge, which this court judicially notices, that when the state was organized nature had her own watershed pattern for each stream. Solid mats of native grasses covered much of the land, which held the soil in place and their roots made it porous. When the rains came the water was held by the grasses, allowing it to penetrate the soil. As the state became settled, the sod was broken and the soil was cultivated. As settlement progressed more native grasses were turned under and the

amount of cultivated land increased which was exposed to the elements, and nature's system of water management and soil conservation was destroyed. As the rains fell much of the water ran off the land and penetration into the soil was greatly reduced. Soil erosion became pronounced; the muddy waters filled the streams with silt, and flood problems multiplied. This situation was not of local character or unique to any one watershed but affected many, not limited even to those within the state. The act, being purely creative legislation, established a watershed district for only *one* drainage basin. Such being its only possible effect, it requires no argument to determine that a general law could have been made applicable to the subject. The conclusion inevitably follows from a consideration of the nature of the subject, that the legislature has never experienced difficulty in framing a general law to reach a desired end, and we look no farther than to the Watershed District Act (24-1201-1221) as an example.

As of March 21, 1958, ten districts were organized under the Watershed District Act, comprising approximately 1,141,722 acres, and nineteen petitions were pending for organization under it. It seems obvious from these facts that "public injury" as referred to in *State, ex rel., v. Hitchcock,* supra, could not possibly result to any person or locality governed by a general law. However, reference to the Watershed District Act is made to demonstrate under the particular facts and conditions which may be judicially noticed in this controversy that a general law could have been made applicable to the subject, and not to hold that the existence of a general law on a subject to which a special act is directed is conclusive. The rule is stated in *Anderson v. Cloud County,* supra:

"We are not concluded either way by the fact that a general law on the subject was in existence when a special act was passed. That fact, however, serves as an apt illustration of the adaptability of a general law upon the subject, and as an argument against the necessity for a special law." (1. c. 735.)

In our judgment, the conclusion herein announced finds support in *State, ex rel., v. Hardwick,* 144 Kan. 3, 57 P. 2d 1231. That case dealt with the power to prevent soil erosion caused by wind rather than by water, and the decision turned upon the validity of an act empowering boards of county commissioners to exercise powers of local legislation pursuant to Art. 2, § 21. The act was held invalid upon the ground that the matter was almost state-wide in scope

and was not a subject of local legislation which could be conferred upon a county tribunal, nor was it a subject which could be limited in scope by fiat of the legislature.

The defendants justify the act upon the ground of an urgent need for a soil and water conservation program in the state, and for haste to create watershed districts to implement the program; that time was the essence of the problem, and that the "piece-meal approach by the petition route" was "slow, tedious and expensive" resulting in "half-way or too limited an approach to an area-wide problem." While any program to stop the wicked waste of the basis of our prosperity ranks high in the governmental affairs of the people, and, as Patrick Henry stated 150 years ago, "The greatest patriot is the man who stops the most gullies," we cannot ignore that this need is state-wide in character, not limited to the watershed in question, or to any other one watershed. Despite the fact that the Little Arkansas River is a gaining stream as it flows over the Equus Beds and has an average annual rate of discharge at Valley Center in excess of 175,000 acre feet, we know of no reason, and none has been suggested, why the characteristics of this land area are so unique as to negate the application of a general law to create a watershed district sufficient in scope and purpose to adequately conserve the soil and precipitation of this watershed. We do not speculate upon specific reasons why the sponsors of the act did not choose to organize the district under the general law, but note that if it was enacted to remove doubt or difficulty of obtaining sufficient petitions or votes to organize the district under the general law, there inheres in the special act the vice which the amendment of 1906 was designed to prevent (*Anderson v. Cloud County*, supra, p. 736).

We here reproduce parts of pamphlets prepared by the sponsors of the act to acquaint and solicit the support of the people of the district and the members of the legislature, which concede the general law was applicable to create a watershed district, but that their plan of enacting the challenged act would provide a "short-cut route—just like playing 'Tic-Tac-Toe' " over the essential steps required to establish a watershed district under the general law. In our judgment these pamphlets show that the principal reason for the special act was to decrease the time required to create a district under the general law which "has been estimated that this process requires a minimum of about two years time . . . at a

# TIME IS THE ELEMENT !!!

## DECREASING THE PRESENT REQUIRED
## TIME IS OUR AIM! !

### 9 STEPS ARE NECESSARY TO ESTABLISH A
### WATERSHED DISTRICT
### FOLLOWING THIS PRESENT PATTERN

| 1. | 2. | 3. |
|---|---|---|
| Selected Watershed | Prepared Petition | Circulate Petition & Enumerate Landowners |
| 4. | 5. | 6. |
| File Petition with Scretary of State | Report of Chief Engineer, Division of Water Resources- State Board of Agriculture | Elect Officers and hold election for organization of District |
| 7. | 8. | 9. |
| Certificate of Incorporation by Secretary of State | General Plan prepared and adopted | Specific Project and Construction |

It has been estimated that this process requires a minimum of about two years' time -- at a cost of approximately $40,000 in local expenditures _each_ year.

# *But…*

## The CENTRAL KANSAS
## WATER CONSERVATION ASSOCIATION

has a plan which will enable a "short-cut" route -- just like playing "Tic-Tac-Toe".

(same 9 steps as on facing page)

This can be done with the proper assistance and cooperation of the 1957 Kansas Legislature.

Steps 1 and 5 have already been determined. To get to 9, the CENTRAL KANSAS WATER CONSERVATION ASSOCIATION is going after the CREATION -- and REALIZATION -- of the LITTLE ARKANSAS RIVER WATERSHED DISTRICT by Legislative Enactment! !

IMMEDIATELY on the heels of this action - and by taking the initiative - the people of this area can accomplish in 6 months what usually takes 8 years.

cost of approximately $40,000 in local expenditures *each year.*" The plan selected by the sponsors has not been conducive to that end. More than a year has elapsed since the special act was enacted, $80,000 in no-fund warrants have been issued, and as yet no valid district exists. We do not pass on the merits of legislation, but time alone is not a sufficient justification for a special law where it is conceded a general law could be made applicable.

We have reviewed the authorities cited by the defendants and conclude they are not in point. In *Water District No. 1 v. Robb,* supra, it was held that the population and urban characteristics of the area involved, including its location as a part of a large metropolitan district, was one which produced a condition requiring special legislation and that a general law was not applicable. In *State, ex rel., v. Drainage District,* 123 Kan. 191, 254 Pac. 372, the question did not concern special legislation, but held the statute in question not unconstitutional on the ground that it delegated legislative power to petitioners to create a drainage district. In *Board of County Comm'rs v. Robb,* 166 Kan. 122, 199 P. 2d 530, neither the intervenors nor the state auditor pleaded facts, nor directed attention to matters of common knowledge or of which judicial notice should be taken, to sustain the burden upon them of showing the classification in question was arbitrary and unreasonable, and it was held the act was a valid general law. *State v. Pawnee County,* 12 Kan. 426 and *Beach v. Leahy, Treasurer,* 11 Kan. 23, are also cited, but they deal primarily with the discretion of the legislature prior to the amendment of 1906 to determine the need for special legislation. As previously noted, that duty has since been transferred to the courts.

The act discloses that the subject matter is one that can be treated generally, in fact it is one that has been so treated, and a general law has been enacted. If there was no general law covering the organization of watershed districts, such a law could be enacted since the subject matter is one that is common to all the people and should be treated generally and not otherwise. As previously indicated, no particular or unique facts showing a local condition requiring special legislation existed, and since a general law on the subject can be made applicable the act in question violated the second clause of Art. 2, § 17, and is unconstitutional and void. Consequently, it is unnecessary that we discuss and decide other questions presented by the parties except to comment briefly on the effect of

language contained in the title and in § 1 of the act describing the district as "an instrumentality and agency of the state of Kansas." In deciding this controversy we have considered this language to mean the legislature intended to create and establish this district as one of the many political subdivisions created to transact the governmental affairs of the people, particularly since the general watershed law was made applicable for its administration and operation. Had the legislature intended otherwise, the act would have violated Art. 11, § 9 which prohibits the state from carrying on works of internal improvement except to construct, reconstruct and maintain a state system of highways (*Leavenworth County v. Miller,* 7 Kan. 479; *State, ex rel., v. Atherton,* 139 Kan. 197, 205, 209, 30 P. 2d 291; *State, ex rel., v. Board of Regents,* 167 Kan. 587, 207 P. 2d 373; *State, ex rel., v. Kansas Armory Board,* 174 Kan. 369, 256 P. 2d 143).

The defendants' motion to discharge the restraining orders heretofore issued is sustained.

From the time the district was created and established until the date this opinion is filed, it had *de facto* existence and the acts of the defendant directors were the acts of *de facto* officers, binding as such, between the people of the district and third persons dealing with them as public officers (*School District v. The State,* 29 Kan. 57, 71; *Riley v. Garfield Township,* 58 Kan. 299, 49 Pac. 85; *Garfield Township v. Finnup,* 8 Kan. App. 771, 774, 61 Pac. 812; *Davidson v. Chalfant,* 85 Kan. 288, 290, 116 Pac. 820; 99 A. L. R. n. pp. 303, 305, 316). The fund now in the custody of the treasurer of the district (being the remaining proceeds from the sale of the no-fund warrants) should be used to pay such warrants, and the proceeds of the tax levy extended upon the property of the district should likewise be made available to the treasurer of the district for that purpose. However, the amounts involved in the tax protest action (G. S. 1949, 79-2005) filed by Continental Oil Company and Continental Pipe Line Company should be refunded by the proper county treasurer to those taxpayers.

Judgment is entered for the plaintiff pursuant to the prayer of the amended petition and in accordance with the views expressed herein.

It is so ordered.