JUDGE ANTHONY M. BRANNON v. NORTH CAROLINA STATE BOARD OF ELECTIONS; M. H. HOOD ELLIS, CHAIRMAN, GREGG O. ALLEN, WILLIAM A. MARSH, RUTH TURNER, JUNE K. YOUNGBLOOD, MEMBERS, STATE BOARD OF ELECTIONS; ALEX K. BROCK, EXECUTIVE SECRETARY-DIRECTOR, STATE BOARD OF ELECTIONS; JUDGE ROBERT F. ORR, JUDGE JACK COZORT, JUDGE JOHN B. LEWIS, JR., AND JUDGE JAMES A. WYNN, JR.

No. 102PA92

(Filed 8 May 1992)

**Judges § 8 (NCI3d)— Supreme Court, Court of Appeals, superior court—election for unexpired portions of terms—constitutionality of statute**

  The statute providing that midterm vacancies in the offices of the Supreme Court, the Court of Appeals, and the superior court shall be filled first by appointment of the Governor, and ultimately by election "to fill the unexpired term of the office," N.C.G.S. § 163-9, does not violate Article IV, Section 16 of the N.C. Constitution, which provides that judges "shall hold office for terms of eight years," but is authorized by the provision of Article IV, Section 19 that "elections shall be held to fill the offices." Article IV, Section 16 refers to the term of the judicial office, not to an individual judge's tenure, and it will be inferred from the word "fill" in Article IV, Section 19 that elections to vacated judicial seats are intended for the unexpired portions of terms only.

  **Am Jur 2d, Judges §§ 9-11, 14, 15, 239, 240.**

  Justice LAKE did not participate in the consideration or decision of this case.

BRANNON v. N.C. STATE BOARD OF ELECTIONS

[331 N.C. 335 (1992)]

ON discretionary review prior to a determination by the Court of Appeals, pursuant to Rule 15(a) of the North Carolina Rules of Appellate Procedure and N.C.G.S. § 7A-31(b), of a judgment granting plaintiff's request for a mandatory injunction and writ of mandamus against defendants Board of Elections and Brock, by *Herring, J.,* in the Superior Court, WAKE County, on 28 February 1992. Heard in the Supreme Court on 16 April 1992.

*Tharrington, Smith & Hargrove, by Michael Crowell and Mark J. Prak, for Plaintiff Appellee.*

*Parker, Poe, Adams & Bernstein, by Robert W. Spearman and Robert H. Tiller, for Defendant Appellant State Board of Elections; Womble Carlyle Sandridge & Rice, by Donald L. Smith, for Intervenor Defendant Appellants Judge Jack Cozort, Judge John B. Lewis, Jr., and Judge James A. Wynn, Jr.*

*Petree Stockton & Robinson, by John F. Mitchell, for Intervenor Defendant Appellant Judge Robert F. Orr.*

EXUM, Chief Justice.

This action arises from a decision of the North Carolina State Board of Elections declining to accept plaintiff's notice of candidacy for the seat on the North Carolina Court of Appeals currently occupied by Judge Robert F. Orr. Following the Board's decision, plaintiff, a judge of the North Carolina Superior Court, brought this action for injunctive relief and mandamus against the Board and its individual members. On 21 February 1992 the trial court allowed a motion to intervene by Judge Orr and three other members of the Court of Appeals, Judge Jack Cozort, Judge John B. Lewis, Jr., and Judge James A. Wynn, Jr. Following a hearing on 28 February 1992, the trial court entered judgment for plaintiff and issued a writ of mandamus ordering the Board of Elections to conduct an election in 1992 for the Court of Appeals seats held by Judges Orr, Cozort, Lewis, and Wynn. Defendants appealed and original defendants petitioned for discretionary review prior to determination by the Court of Appeals. The petition was allowed on 17 March 1992.

The sole issue raised by defendants' appeal is whether a person elected to fill a vacancy on the superior court, Court of Appeals, or Supreme Court serves for a new, full eight-year term, or serves only the unexpired portion of the vacated term. This question re-

## BRANNON v. N.C. STATE BOARD OF ELECTIONS

[331 N.C. 335 (1992)]

quires us to decide if N.C.G.S. § 163-9, which provides that such an election is for the unexpired term, violates Article IV, Section 16 of the North Carolina Constitution, which provides in part that judges "shall hold office for terms of eight years." The trial court held that the statute does not violate our State Constitution and that eight-year commissions issued by the Governor to Judges Orr, Cozort, Lewis, and Wynn are a nullity. For reasons explained below, we agree and affirm the judgment of the trial court.

I.

The facts of this case are not disputed. The judgeship now held by Judge Orr was created by the legislature in 1977 when it expanded the Court of Appeals from nine to twelve members. 1977 N.C. Sess. Laws ch. 1047. The legislation provided that the Governor was to make temporary appointments to the three seats, and that in 1978 successors would be elected "to serve the remainder of the unexpired term which began on January 1, 1977." *Id.* The Governor appointed John Webb to one of the seats, and Judge Webb was elected in 1978 to serve the remainder of the term. In 1984 Judge Webb was reelected to a new eight-year term beginning 1 January 1985. Judge Webb resigned from his seat in 1986 after being elected to this Court. The Governor appointed Judge Orr to the vacancy on the Court of Appeals. In conformity with N.C.G.S. § 163-9, an election was held in 1988 purportedly to fill the unexpired term of that office. Official records with the Board of Elections, including the election ballot, referred to the seat as "For Judge of Court of Appeals (Term ending 12/31/92)." Judge Orr won the election and was issued a certificate of election by the Secretary of State providing that the election was for the unexpired term of office. In September 1991, the Governor issued a commission to Judge Orr stating that he was to serve "for a term of eight years beginning on November 29, 1988, and ending on November 28, 1996, unless earlier terminated."[1]

In December 1991 the Board of Elections voted not to accept notices of candidacy or conduct an election in 1992 for the Court

---

1. The Governor issued similar commissions of office to Judges Cozort, Lewis, and Wynn, who like Judge Orr were elected to Court of Appeals seats vacated during their terms. Each commission lists a beginning date of office in November of the year the judge was elected and an ending date eight years later.

of Appeals seat held by Judge Orr.[2] Based on that decision, the Board refused to accept plaintiff's notice of candidacy, prompting the action now before us.

II.

Plaintiff contends the Board is required by N.C.G.S. § 163-9 to hold an election for Judge Orr's seat this year. Section 163-9 provides that vacancies in the offices of the Supreme Court, the Court of Appeals, and the superior court shall be filled first by appointment of the Governor, and ultimately by election "to fill the unexpired term of the office."[3] Defendants contend that Section 163-9, insofar as it provides for elections of judges to fill only the unexpired portions of eight-year terms, violates Article IV, Section 16, of the North Carolina Constitution, providing that judges "shall be elected . . . and shall hold office for terms of eight years." Therefore, defendants contend, this much of the statute is invalid and Judge Orr, by reason of the constitutional provision, was elected in 1988 for a full eight-year term and was entitled to the eight-year commission issued him by the Governor.

We noted in *State ex rel. Martin v. Preston*, 325 N.C. 438, 448-49, 385 S.E.2d 473, 478 (1989), that it is "firmly established that our State Constitution is not a grant of power. All power which is not expressly limited by the people in our State Constitution remains with the people, and an act of the people through their representatives in the legislature is valid unless prohibited

---

2. The Board also voted not to accept notices of candidacy or to conduct elections in 1992 for the Court of Appeals seats held by Judges Cozort, Lewis, and Wynn.

3. N.C.G.S. § 163-9 provides in full:

Vacancies occurring in the offices of Justice of the Supreme Court, judge of the Court of Appeals, and judge of the superior court for causes other than expiration of term shall be filled by appointment of the Governor. An appointee shall hold his place until the next election for members of the General Assembly that is held more than 60 days after the vacancy occurs, at which time an election shall be held to fill the unexpired term of the office: Provided, that when the unexpired term of the office in which the vacancy has occurred expires on the first day of January succeeding the next election for members of the General Assembly, the Governor shall appoint to fill that vacancy for the unexpired term of the office.

Vacancies in the office of district judge which occur before the expiration of a term shall not be filled by election. Vacancies in the office of district judge shall be filled in accordance with G.S. 7A-142.

BRANNON v. N.C. STATE BOARD OF ELECTIONS

[331 N.C. 335 (1992)]

by that Constitution." For this reason, this Court reviews acts of the state legislature with great deference; a statute cannot be declared unconstitutional under the State Constitution unless that Constitution clearly prohibits the statute. "Every presumption favors the validity of a statute. It will not be declared invalid unless its unconstitutionality be determined beyond a reasonable doubt." *Assurance Co. v. Gold, Comr. of Insurance*, 249 N.C. 461, 463, 106 S.E.2d 875, 876 (1959); *accord, Mitchell v. North Carolina Industrial Development Financing Authority*, 273 N.C. 137, 144, 159 S.E.2d 745, 750 (1968).

The dispute in this case requires us to construe two provisions in Article IV of our State Constitution. Section 16 provides, in pertinent part, that "[j]ustices of the Supreme Court, Judges of the Court of Appeals, and regular Judges of the Superior Court shall be elected by the qualified voters and shall hold office for terms of eight years and until their successors are elected and qualified." Section 19 provides, in pertinent part, that

> all vacancies occurring in the offices provided for by this Article shall be filled by appointment of the Governor, and the appointees shall hold their places until the next election for members of the General Assembly that is held more than 60 days after the vacancy occurs, when elections shall be held to fill the offices.

Section 16 provides for eight-year terms for certain judicial offices, but it does not contemplate the filling of vacancies occurring during those terms. Therefore, the answer to the dispute before us cannot be found in that provision alone. Section 19 provides for filling vacancies in judicial offices, albeit in language not explicit enough to preclude the dispute before us. On close examination, however, the language of Section 19 allows filling prematurely vacated judicial offices by election for the unexpired portions of the terms.

The part of Article IV, Section 19 bearing on the issue now before us, the provision that elections for vacated offices are to "fill the offices," does not specify whether those elected to vacated judicial offices are to finish the unexpired terms or begin new terms. Defendants contend the plain meaning of the language in Section 16 is that all judges, no matter when elected, are to receive commissions of eight years. They construe the language of Section 19 by reference to the eight-year term provision in Section 16. There is, however, a different approach to the interpretation of

Section 19 which we conclude gives fuller meaning to its language independent of, but not inconsistent with, the eight-year judicial term provision in Section 16.

The words "elections shall be held to fill the offices" in Section 19 allow a reasonable inference that the elections are intended to select persons to assume the specific terms of offices that have been prematurely vacated and which expire eight years from when they began. The verb "fill" commonly means "to supply with as much as can be held or contained" or "to make full or complete." Webster's Third New International Dictionary 849 (1976). A partially empty glass of water is filled by adding only as much water as brings the total quantity to the brim. Likewise, an office vacated before the expiration of its term is filled by election of someone to complete the unexpired term. This concept is not a novel one, as we have recognized before.

> A term of office is one thing. An office holder is something else. The incumbent may go out, nobody come in, and the term goes on. If a successor is appointed or elected, he fills the unexpired portion of the term.

*State ex rel. Martin v. Preston*, 325 N.C. at 452-53, 385 S.E.2d at 481 (quoting *Murray v. Payne*, 137 Kan. 685, 689, 21 P.2d 333, 335 (1933)). Construed in this way, Article IV, Section 19 provides for elections to fill unexpired terms in the event of midterm vacancies. Article IV, Section 16 does not speak to the question of how such vacancies are filled. It simply provides for judges to be elected and sets their terms at eight years. There is, therefore, no conflict between the sections, nor does one limit the other. They simply deal with different things—Section 16 with the length of terms and the method of selection and Section 19 with the filling of vacancies.

This Court is vested with the authority, and obligation, to resolve disputes about the meaning of our State Constitution. *Id.* at 449, 385 S.E.2d at 478. If the meaning of our Constitution is clear from the words used, we need not search for a meaning elsewhere. *Id.* In the case of Article IV, Section 19, we infer from the word "fill" that elections to vacated judicial seats are intended for the unexpired portions of terms only. "[I]n construing either the federal or State Constitution, what is implied is as much a part of the instrument as what is expressly stated." *In re Martin*, 295 N.C. 291, 299, 245 S.E.2d 766, 771 (1978). This construction

BRANNON v. N.C. STATE BOARD OF ELECTIONS

[331 N.C. 335 (1992)]

supports our conclusion that, not only does N.C.G.S. § 163-9 not violate the State Constitution, but it is authorized by Article IV, Section 19.

The historical context in which the provision was initially adopted, later amended, and readopted and longstanding judicial precedent support our interpretation of Article IV, Section 19.

The State Constitution first provided for the election of judges in 1868.[4] Two sections of Article IV provided for elections. Section 26, now Section 16, provided that judges elected by the people "shall hold their offices for eight years."[5] Section 31, now Section

---

4. Before 1868, the State Constitution provided that judges be elected by joint vote of both chambers of the General Assembly. N.C. Const. of 1776, art. IV, §§ 2-3. Delegates to the constitutional convention of 1868 advocated three alternatives for selecting judges of the Supreme Court and superior court: that they be elected by the General Assembly, as they had been in the past; that they be elected by the people; and that they be appointed by the Governor with the consent of the state senate or the General Assembly. Convention Journal, Constitutional Convention of 1868, at 181. The resolution for popular political election of judges was made only after lengthy debate. See J. W. Holden, "Proceedings of the Convention," *The Daily North Carolina Standard*, February 29, 1868. Delegates expressed concern that popular elections for short terms of office would too frequently expose the judiciary to political pressures and would drive talented judges from the bench. *Id.* The delegates discussed various term lengths, ranging from six to sixteen years, and ultimately settled on terms of eight years for justices of the Supreme Court and judges of the superior court. N.C. Const. of 1868, art. IV, § 26. The debate over whether North Carolina judges should be elected by the people continues to this day. See S.B. 71 (providing for referendum to amend the North Carolina Constitution to provide for appointment of justices and judges), S.B. 72 (providing for appointment of justices and judges), 1991 Reg. Sess., N.C. Gen. Assembly; *Report of the Judicial Selection Study Commission*, 1989 Reg. Sess., N.C. Gen. Assembly.

5. Section 26 of Article IV in the North Carolina Constitution of 1868 provided as follows:

> The Justices of the Supreme Court shall be elected by the qualified voters of the State, as is provided for the election of members of the General Assembly. They shall hold their offices for eight years. The Judges of the Superior Courts shall be elected in like manner, and shall hold their offices for eight years; but the Judges of the Superior Courts elected at the first election under this Constitution, shall, after their election, under the superintendance of the Justices of the Supreme Court be divided by lot into two equal classes, one of which shall hold office for four years, the other for eight years.

After several amendments to the Constitution, the eight-year term provision is now in Section 16 of Article IV, as adopted in 1970. It provides:

19, provided that vacancies in the offices "shall be filled by appoint-ment of the Governor, . . . and the appointees shall hold their places until the next regular election."[6]

The vacancy provision of Article IV was first construed in *People of North Carolina ex rel. Cloud v. Wilson*, 72 N.C. 155 (1875). The *Cloud* Court was required to determine whether the language "next regular election" meant appointees to vacant judicial seats were to face election at the next election of the General Assembly, or at the next regular election for the vacant judicial office. The Court decided that the language provided for an election to be held at the next regular election for that office. *Id.* at 161. Accordingly, when a judicial office under Article IV became vacant, the office was to be filled by appointment of the Governor, and

---

**Terms of office and election of Justices of the Supreme Court, Judges of the Court of Appeals, and Judges of the Superior Court.** Justices of the Supreme Court, Judges of the Court of Appeals, and regular Judges of the Superior Court shall be elected by the qualified voters and shall hold office for terms of eight years and until their successors are elected and qualified. Justices of the Supreme Court and Judges of the Court of Appeals shall be elected by the qualified voters of the State. Regular Judges of the Superior Court may be elected by the qualified voters of the State or by the voters of their respective districts, as the General Assembly may prescribe.

6. Article IV, Section 31 of the 1868 North Carolina Constitution provided in full as follows: "All vacancies occurring in the offices provided for by this article of this Constitution, shall be filled by the appointment of the Governor, unless otherwise provided for, and the appointees shall hold their places until the next regular election." This section has been amended and renumbered several times since 1868.

The current vacancy provision, in Article IV, Section 19, ratified in 1970 and amended in 1986, provides:

Unless otherwise provided in this Article, all vacancies occurring in the offices provided for by this Article shall be filled by appointment of the Governor, and the appointees shall hold their places until the next election for members of the General Assembly that is held more than 60 days after the vacancy occurs, when elections shall be held to fill the offices. When the unexpired term of any of the offices named in this Article of the Constitution in which a vacancy has occurred, and in which it is herein provided that the Governor shall fill the vacancy, expires on the first day of January succeeding the next election for members of the General Assembly, the Governor shall appoint to fill that vacancy for the unexpired term of the office. If any person elected or appointed to any of these offices shall fail to qualify, the office shall be appointed to, held, and filled as provided in case of vacancies occurring therein. All incumbents of these offices shall hold until their successors are qualified.

BRANNON v. N.C. STATE BOARD OF ELECTIONS

[331 N.C. 335 (1992)]

the appointee was to serve the unexpired portion of the term before facing election by the people for the next term.

In reaching its decision, the *Cloud* Court reasoned that if judges had to face election at the next election of the General Assembly, and if these elections were for full eight-year terms, as the Constitution may have required, the result would be to disturb a system of regularly staggered judicial offices. *Cloud* at 162.[7]

Within a few months after the *Cloud* decision, the people of North Carolina amended our State Constitution so as to, in effect, overrule the Court's holding. Article IV, Section 31 was renumbered Section 25, and words were added to specify that persons appointed by the Governor to fill vacancies in judicial offices provided for by the article "shall hold their places until the next regular election for members of the General Assembly, when elections shall be held to fill such offices." N.C. Const. of 1875, art. IV, § 25. The first part of the amendment, which overruled *Cloud*, meant that judicial offices vacated before their expiration were to be filled by the voters earlier than the regularly scheduled elections for the next terms of those offices. The provision that midterm elections would "fill such offices" allows the reasonable interpretation, as we have demonstrated above, that those elected were to serve the remainder of unexpired terms.

We can infer that those who crafted and voted for the amendment to Article IV in 1875 were aware of the problems raised in *Cloud* and intended to resolve them. *Cf. Sneed v. Greensboro City Bd. of Educ.*, 299 N.C. 609, 264 S.E.2d 106 (1980) (reviewing history to conclude that a state constitutional provision for "free public schools" was never understood to preclude modest, supplementary fees for those able to pay). Shortly after the 1875 amendments, the General Assembly enacted the precursor to N.C.G.S. § 163-9, in Chapter 275, Section 65 of the Public Laws.[8] That statute provided:

---

7. The State Constitution of 1868 provided that superior court judges elected at the first election for judges would be "divided by lot into two equal classes, one of which shall hold office for four years, the other for eight years." N.C. Const. of 1868, art. IV, § 26.

8. The statute was amended and renumbered several times before its current codification at N.C.G.S. § 163-9, which was last amended in 1986. 1986 Sess. Laws ch. 920, § 6.

Whenever any vacancies shall exist by reason of death, resigna-
tion, or otherwise, in any of the following offices, to wit:
. . . justices of the Supreme Court, and judges of the superior
court, the same shall be filled by elections to be held in like
manner and places, and under the same regulations and rules
as are prescribed for general elections, at the first general
election thereafter, except as otherwise provided for in the
Constitution.

1876-77 Sess. Laws ch. 275, § 65. The statute and the constitutional
amendment were soon thereafter applied to fill vacancies in judicial
offices by elections for the unexpired terms, according to an ad-
visory opinion of this Court in 1894. *Opinion of the Judges*, 114
N.C. 925, 21 S.E. 963 (1894). The earliest example occurred in 1881,
when Justice Ruffin was elected to fill the unexpired term of office
vacated by Justice Dillard. That term began in 1878 and would
not expire until 1886. Within a year of his election, Justice Ruffin
resigned, and Justice Merrimon was appointed, and then elected,
to serve out the term until it expired. Justice Merrimon was reelected
to an eight-year term in 1886. *Id.* at 926-27, 21 S.E. at 964-65.
Although the advisory opinion has no precedential value, *State
ex rel. Martin v. Preston*, 325 N.C. at 454, 385 S.E.2d at 481,
its contents are historically relevant to demonstrate the practice
followed shortly after the 1875 constitutional amendment.

This Court expressly disapproved the reasoning in *Cloud* in
*Rodwell v. Rowland*, 137 N.C. 443, 450, 50 S.E. 319, 323 (1905),
acknowledging that "the great weight of authority is to the effect
that a person so elected [to fill a judicial office vacated during
a term] will hold only for the unexpired term." The *Rodwell* deci-
sion involved the filling of a vacated post for clerk of superior
court, but the Court drew on authorities concerning vacancies in
judicial office and endorsed reasoning that applies to the case now
before us. Quoting the advisory opinion of 1894, the *Rodwell* Court
noted that " 'when the duration of the term of office which is
filled by popular election is in doubt or uncertain, the interpretation
is to be followed which limits it to the shortest time, and returns

---

Another statute enacted in 1899 more specifically provided that vacancies
in judicial office "shall be filled for the unexpired term at the next general election
for members of the General Assembly." 1899 Sess. Laws ch. 613. This statute
was eventually repealed, 1969 Sess. Laws ch. 1190, § 57, but before that the "unex-
pired term" language was added to N.C.G.S. § 163-9. 1967 N.C. Sess. Laws ch.
775, § 163-9, para. 1.

to the people at the earliest period the power and authority to refill it.' " *Id.* at 447, 50 S.E. at 321 (quoting *Opinion of the Judges*, 114 N.C. at 929, 21 S.E. at 966).

Since this Court's decision in *Rodwell*, our State Constitution has been amended several times and has been completely ratified anew once, always by a vote of the people. In 1962 a new Article IV was ratified with a slight change in its provision for judicial offices. Section 14, now Section 16, was amended, in pertinent part, to provide more specifically that judges "shall hold office for terms of eight years." The addition of the word "terms" clarifies the notion that a term of judicial office, not necessarily an individual judge's tenure, shall be eight years. The vacancy provision of Article IV was amended in 1962 with language not pertinent to this case. In 1970 a new State Constitution was ratified with no substantive change to Article IV.

Plaintiff argues, and we agree, that by ratifying changes in the State Constitution in 1962 and a new Constitution in 1970 without substantial changes in the vacancy provision, the people should be presumed to have accepted the interpretations given that provision since it was adopted in 1875. This Court has said:

> "It is an established rule of construction that, where a constitutional provision has received a settled judicial construction, and is afterward incorporated into a new or revised Constitution, it will be presumed to have been retained with a knowledge of the previous construction, and the courts will feel bound to adhere to it."

*Williamson v. City of High Point*, 213 N.C. 96, 105, 195 S.E. 90, 95 (1938) (quoting 12 C.J. *Constitutional Law* § 69, at 717 (1917)). The people's vote to ratify a new Article IV in 1962, and their vote to ratify the State Constitution in its entirety in 1970, each time with no substantive change in the vacancy provision of Article IV, allows the inference that the people adopted the longstanding and, until the issuance of the commissions in question, consistent interpretation of that provision by all branches of state government.

The view of the *Rodwell* Court that vacancies in judicial office are to be filled by election for the unexpired term has been implemented consistently by the State Board of Elections in ballots, official records, and declarations of elections results. This construc-

tion was so well entrenched that it was included in a 1986 ballot to approve a related constitutional amendment:

> FOR [OR AGAINST] constitutional amendment providing that an election shall be held to fill the remainder of the unexpired term if the vacancy occurs more than 60 days before the next election, rather than 30 days as is presently provided.

While the history of legislative and executive interpretation of the State Constitution is not dispositive, it adds weight to our construction of Article IV, Sections 16 and 19. *See Corporation Comm'n v. Constr. Co.*, 160 N.C. 582, 590, 76 S.E. 640, 643 (1912).

Defendants contend it is unreasonable to hold that the drafters or the people intended the vacancy provision in Article IV to allow election for unexpired terms, in light of the vacancy provision in Article III, which expressly allows elections for unexpired terms of executive offices. Article III, Section 13 of the 1868 State Constitution provided that persons elected to fill vacancies in certain executive branch offices "shall hold the office for the remainder of the unexpired term fixed in the first section of this Article." The most recently ratified State Constitution provides in Article III, Section 7, that prematurely vacated executive offices shall be filled by election "for the remainder of the unexpired term fixed in this Section." If the drafters were able expressly to provide for elections to fill only the unexpired portions of these offices, defendants argue, their failure to express the same explicitly in Article IV indicates they intended it to have a different result. We are not persuaded by this argument.

Article III establishes various, discrete offices, each starting and ending on the same day, every four years, beginning on an exact date provided in Article III.[9] Elections for these offices are to be held at the same time as elections for the General Assembly. N.C. Const. art. III, § 7. The express provision in Article III that executive offices prematurely vacated are to be filled by elections for the unexpired terms is appropriate and conveniently articulated,

---

9. In the 1868 State Constitution, Article III, Section 1 provided that the executive officers would "hold their offices four years from and after the first of January, 1869." In the most recently adopted State Constitution, Article III, Section 7 provides that the executive officers "shall be elected by the qualified voters of the State in 1972" and that "[t]heir term of office shall be four years and shall commence on the first day of January next after their election."

since all the terms of the various offices, being of the same length, begin and end on the same day. In contrast to Article III's provision for discrete and specified executive offices, Article IV does not establish discrete judgeships, nor does it state when each judicial office is to begin, or when elections are to be held for these offices. Article IV establishes judicial offices in groups, allowing the legislature to increase the number of judgeships. N.C. Const. art. IV, §§ 6, 7, 9, 10. In the State Constitution of 1868, Article IV provided for a wide variety of offices in addition to judicial offices, such as clerk of the Supreme Court, clerks of the superior courts, sheriffs, constables, and coroners, whose terms of office ranged from two to four years. An express provision for filling vacancies in these offices by election for the unexpired term might have been thought confusing, because the date of expiration would differ depending on the office. Even after most of the other offices were removed from Article IV, the remaining judicial offices, though all eight years in duration, began in different years. The system of staggered judicial offices mentioned in *Cloud* still exists. The variety of expiration dates of these offices explains why the constitutional provision for filling these vacancies is less specific than the vacancy provision in Article III.

For the reasons stated, we conclude that N.C.G.S. § 163-9 is not prohibited by our State Constitution and is a lawful exercise of legislative power. The eight-year commissions issued by the Governor, being inconsistent with the statute, are invalid. The judgment of the trial court ordering the Board of Elections to conduct elections for the judicial seats in 1992 is, therefore,

Affirmed.

Justice LAKE did not participate in the consideration or decision of this case.