IN RE: JERRY L. SPIVEY, DISTRICT ATTORNEY

No. 36PA96

(Filed 10 February 1997)

**1. District Attorneys § 5 (NCI4th)— removal by impeachment—no constitutional or statutory authority**

District attorneys are not subject to removal by impeachment because impeachment of district attorneys is not within the intent of either the North Carolina Constitution or N.C.G.S. § 123-5 (1986).

**Am Jur 2d, Prosecuting Attorneys §§ 16, 17.**

IN RE SPIVEY

[345 N.C. 404 (1997)]

**Disciplinary action against attorney for misconduct related to performance of official duties as prosecuting attorney. 10 ALR4th 605.**

**Availability of writ of prohibition or similar remedy against acts of public prosecutor. 16 ALR4th 112.**

2. **District Attorneys § 5 (NCI4th)— constitutionality of removal statute**

Neither Article IV, § 18 nor any other provision of the North Carolina Constitution prohibits the General Assembly from enacting a statutory method for the removal of district attorneys from office so long as district attorneys whose removal is sought are accorded due process of law. Therefore, the statute creating a procedure for removal of district attorneys from office by the superior court, N.C.G.S. § 7A-66, does not violate the North Carolina Constitution, and the superior court had subject matter jurisdiction of a proceeding to remove a district attorney from office.

**Am Jur 2d, Prosecuting Attorneys §§ 16, 17.**

**Disciplinary action against attorney for misconduct related to performance of official duties as prosecuting attorney. 10 ALR4th 605.**

**Availability of writ of prohibition or similar remedy against acts of public prosecutor. 16 ALR4th 112.**

3. **District Attorneys § 5 (NCI4th)— removal for racial epithets—not protected speech**

The removal of a district attorney from office for his behavior in a bar, including his repeated references to an African-American bar patron by a racial epithet, did not violate the district attorney's constitutionally protected right to express his viewpoint. Instead, when taken in context, the racial epithets used by the district attorney constituted "fighting words" tending to incite an immediate breach of the peace which are not protected by the First Amendment to the United States Constitution or by Article I, § 14 of the North Carolina Constitution.

**Am Jur 2d, Prosecuting Attorneys §§ 16, 17.**

**Disciplinary action against attorney for misconduct related to performance of official duties as prosecuting attorney. 10 ALR4th 605.**

IN RE SPIVEY

[345 N.C. 404 (1997)]

Availability of writ of prohibition or similar remedy against acts of public prosecutor. 16 ALR4th 112.

4. District Attorneys § 5 (NCI4th)— removal from office— enumerated grounds

N.C.G.S. § 7A-66 requires removal of a district attorney from office if the superior court judge finds that one of the grounds enumerated in the statute exists.

Am Jur 2d, Prosecuting Attorneys §§ 16, 17.

Disciplinary action against attorney for misconduct related to performance of official duties as prosecuting attorney. 10 ALR4th 605.

Availability of writ of prohibition or similar remedy against acts of public prosecutor. 16 ALR4th 112.

5. District Attorneys § 5 (NCI4th)— racial epithets against member of public—conduct prejudicial to administration of justice

The trial court properly found that a district attorney's use of racial epithets against a member of the public in an apparent attempt to provoke an affray in public was conduct prejudicial to the administration of justice that brings the judicial office into disrepute, and this ultimate finding required removal of the district attorney from office.

Am Jur 2d, Prosecuting Attorneys §§ 16, 17.

Disciplinary action against attorney for misconduct related to performance of official duties as prosecuting attorney. 10 ALR4th 605.

Availability of writ of prohibition or similar remedy against acts of public prosecutor. 16 ALR4th 112.

6. District Attorneys § 5 (NCI4th)— removal proceeding— appointment of independent counsel

In order to comply with the due process requirement of a neutral decision-maker, it was within the inherent power of the superior court to appoint an independent counsel to gather and present evidence in a judicial inquiry into whether a district attorney should be removed from office for misconduct.

Am Jur 2d, Prosecuting Attorneys §§ 16, 17.

IN RE SPIVEY

[345 N.C. 404 (1997)]

Validity, under state law, of appointment of special prosecutor where regular prosecutor is charged with, or being investigated for, criminal or impeachable offense. 84 ALR3d 115.

Disciplinary action against attorney for misconduct related to performance of official duties as prosecuting attorney. 10 ALR4th 605.

Availability of writ of prohibition or similar remedy against acts of public prosecutor. 16 ALR4th 112.

7. District Attorneys § 5 (NCI4th)— removal proceeding— SBI investigation—absence of prejudice

Assuming *arguendo* that the superior court erred in seeking the assistance of the SBI in investigating a district attorney's alleged misconduct and that the investigation went beyond that agency's authority, the district attorney was not prejudiced where the SBI simply located witnesses who were present during the alleged misconduct and took their statements, which were turned over to the independent counsel.

Am Jur 2d, Prosecuting Attorneys §§ 16, 17.

Disciplinary action against attorney for misconduct related to performance of official duties as prosecuting attorney. 10 ALR4th 605.

Availability of writ of prohibition or similar remedy against acts of public prosecutor. 16 ALR4th 112.

8. District Attorneys § 5 (NCI4th)— removal proceeding— procedural irregularities—absence of prejudice

A district attorney was not prejudiced by procedural irregularities in a removal proceeding under N.C.G.S. § 7A-66 where the record shows that the superior court judge, conducting the proceeding without a jury, understood the issues before him and the proper focus for the inquiry in this case and that he properly conducted the proceeding.

Am Jur 2d, Prosecuting Attorneys §§ 16, 17.

Disciplinary action against attorney for misconduct related to performance of official duties as prosecuting attorney. 10 ALR4th 605.

**Availability of writ of prohibition or similar remedy against acts of public prosecutor. 16 ALR4th 112.**

On discretionary review, prior to determination by the Court of Appeals, pursuant to N.C.G.S. § 7A-31, of an order entered by Allsbrook, J., on 29 August 1995 in Superior Court, New Hanover County, removing respondent Jerry L. Spivey from the Office of District Attorney for the Fifth Judicial District. Heard in the Supreme Court 13 September 1996.

*Fuller, Becton, Slifkin, Zaytoun & Bell, by James C. Fuller, Maria J. Mangano, and Asa L. Bell, Jr., for petitioner-appellees Robert F. Kendrick, Peter Grear, and Terry B. Richardson.*

*Tharrington & Smith, by Roger W. Smith, E. Hardy Lewis, and Debra Smith Sasser, for respondent-appellant Spivey.*

MITCHELL, Chief Justice.

This appeal arises from the removal of a district attorney from office pursuant to N.C.G.S. § 7A-66. Uncontested evidence tends to show that during the early morning hours of 30 June 1995, respondent Jerry L. Spivey, District Attorney for the Fifth Prosecutorial District, was at a bar in Wrightsville Beach. While there, Spivey loudly and repeatedly addressed a black patron, Mr. Ray Jacobs, using the derogatory and abusive racial epithet "nigger." Because of this and other improper conduct, Spivey was forcefully removed from the premises despite his unruly objections. As a result of his conduct, several affidavits were filed seeking removal of respondent Spivey from the office of district attorney pursuant to N.C.G.S. § 7A-66. Following notice to Spivey and a hearing on the matter, Judge Allsbrook made findings in accord with the uncontested evidence and further found that District Attorney Spivey had engaged in conduct prejudicial to the administration of justice and had brought his office into disrepute. Based on these findings, Judge Allsbrook ordered that Spivey be permanently removed from his position as district attorney.

By his first assignment of error, respondent Spivey contends that the General Assembly was without constitutional authority to pass N.C.G.S. § 7A-66 providing for the removal of district attorneys from office. Based on the doctrine of separation of powers set forth in the Constitution of North Carolina, he argues that absent an express constitutional grant of power, the General Assembly has no power to

remove a constitutional officer or provide for the removal of a constitutional officer for misconduct or for any other reason. He contends that the Constitution confers no such grant of power for the removal of district attorneys upon the legislature and, thus, that N.C.G.S. § 7A-66 is unconstitutional. Therefore, he contends, the superior court was without subject matter jurisdiction, and as a result, this Court must hold the superior court order removing him from office to be null and void. We do not agree.

At the time of the hearing in superior court, respondent made no motion to dismiss for want of subject matter jurisdiction. It is well established, however, that a challenge to the trial court's subject matter jurisdiction may be made at any time, even on appeal to this Court. *Askew v. Leonard Tire Co.*, 264 N.C. 168, 171, 141 S.E.2d 280, 282 (1965). Therefore, this issue is properly before us.

N.C.G.S. § 7A-66, enacted in 1973, aims to create a procedure for the removal of district attorneys by the superior court. The statute purports to confer upon the superior court judge the power to "hear evidence and make findings of fact and conclusions of law and if he finds that grounds for removal exist, he shall enter an order permanently removing the district attorney from office, and terminating his salary." N.C.G.S. § 7A-66 (1995).

We begin with the basic premise that jurisdiction is essential to a valid proceeding or judgment. *Baker v. Varser*, 239 N.C. 180, 185, 79 S.E.2d 757, 761 (1954). In determining whether N.C.G.S. § 7A-66 is an effective grant of subject matter jurisdiction to the superior court, this Court must consider whether the General Assembly has the power to create a means, not expressly provided for in the Constitution of North Carolina, by which the superior court may remove a district attorney from office. We conclude that the General Assembly has such authority.

Article IV, Section 18 creates the office of district attorney, providing that the holder of that office is to be "chosen for a term of four years by the qualified voters" of the district. N.C. Const. art. IV, § 18. District attorneys are "independent constitutional officers." *State v. Camacho*, 329 N.C. 589, 593, 406 S.E.2d 868, 870 (1991). They are the constitutional officers expressly vested by our Constitution with the sole and exclusive responsibility for the prosecution on behalf of the State of *all* criminal actions in the superior courts. *Id.* at 593, 406 S.E.2d at 871. They are vested by statute with responsibility for the

prosecution of all criminal actions and infractions in the district courts. N.C.G.S. § 7A-61 (1995).

[1] Respondent-appellant Spivey contends that as he is an independent constitutional officer, the only possible method—if any method exists—for his removal from office is impeachment as contemplated in Article IV, Sections 1 and 4 of the Constitution. He notes that Article IV, Section 1 vests the judicial power of the State in a "Court for the Trial of Impeachments" and in a "General Court of Justice." N.C. Const. art. IV, § 1. Further, Article IV, Section 4 provides that "the House of Representatives solely shall have the power of impeaching. The Court for the Trial of Impeachments shall be the Senate." N.C. Const. art. IV, § 4. He reminds us that under our Constitution's requirement of separation of judicial, legislative, and executive powers of government, "[i]t is a well established principle of constitutional law that when the jurisdiction of a particular court is constitutionally defined, the legislature cannot by statute restrict or enlarge that jurisdiction unless authorized to do so by the constitution." *Smith v. State*, 289 N.C. 303, 328, 222 S.E.2d 412, 428 (1976); *see also Marbury v. Madison*, 5 U.S. 137, 173-80, 2 L. Ed. 60, 72-74 (1803) (same under United States Constitution). He contends that Article IV, Sections 1 and 4 withhold from the judiciary the power to impeach and try constitutional officers by placing that power solely in the Court for the Trial of Impeachments. He argues that since the superior court could not be given jurisdiction over an impeachment proceeding and the Constitution does not provide for the removal of constitutional officers by any other method, N.C.G.S. § 7A-66 purporting to give the superior court the authority to remove district attorneys from office by a method other than impeachment is unconstitutional. Therefore, he contends that the order of the superior court requiring his removal from office was null and void *ab initio*. We reject these arguments for reasons which follow.

The 1868 Constitution of North Carolina was "unusual among the states because it [did] not list either the officers subject to impeachment or the proper grounds of impeachment." David M. Lawrence, *Removing Local Elected Officials from Office in North Carolina*, 16 Wake Forest L. Rev. 547, 549-50 (1980) [hereinafter *Removing Local Elected Officials*]. Prior to our Constitution of 1868, however, no such omissions were found in our state constitutions.

The omissions date from the 1868 constitution. The 1835 constitution, which in this respect simply elaborated the original

IN RE SPIVEY

[345 N.C. 404 (1997)]

1776 language, listed both the officers subject to impeachment—governor, supreme court justices and superior court judges, and "all other officers of this State"—and the grounds—willful violation of the constitution, maladministration, and corruption. N.C. Const. of 1776, art. III, § 1(1) (1835).

*Removing Local Elected Officials*, 16 Wake Forest L. Rev. at 550 n.12. No such listing of impeachable officers or offenses was included in the Constitution of 1868.

In 1877, this Court was faced with a question concerning whether a judge of probate was liable to impeachment under the Constitution of 1868. We noted that the Constitution "nowhere declares what persons are liable to impeachment." *People ex rel. Attorney General v. Heaton*, 77 N.C. 18, 20-21 (1877). As a result, this Court concluded that it must "look not to the Constitution, but to the statute law, to ascertain what persons are liable to impeachment." *Id.* at 21. We then noted: "The first act under the new Constitution [of 1868] was passed by the Legislature of 1868-69, Bat. Rev., ch. 58 sec. 16 of which enacts that '[e]very officer in this State shall be liable for impeachment for (1) corruption or other misconduct in his official capacity,' etc., enumerating many other causes of impeachment." *Id.* "Of the seven impeachments considered since 1868, one was of a governor, two were of supreme court justices, three were of superior court judges, and one was of a solicitor [or district attorney]. The journals record no attempt to impeach a local official." *Removing Local Elected Officials*, 16 Wake Forest L. Rev. at 551-52.

Assuming *arguendo* that our decision in *Heaton* is still controlling precedent and we still must look to the statutes rather than the Constitution to ascertain what persons are liable to impeachment, district attorneys are no longer subject to impeachment. The pertinent statute now provides:

Each member of the Council of State, each justice of the General Court of Justice, and each judge of the General Court of Justice shall be liable to impeachment for the commission of any felony, or the commission of any misdemeanor involving moral turpitude, or for malfeasance in office, or for willful neglect of duty.

N.C.G.S. § 123-5 (1986). The statutory listing is exclusive and does not allow for impeachment of district attorneys.

**IN RE SPIVEY**

[345 N.C. 404 (1997)]

Since our decision in *Heaton*, however, our Constitution has been amended many times and now specifically provides for the removal of numerous state officials by impeachment. *E.g.*, N.C. Const. art. III, § 3(4) (expressly providing that the Governor is subject to removal by impeachment and may be otherwise removed because of mental incapacity); art. III, § 7 (expressly providing that the Lieutenant Governor, the Secretary of State, the Auditor, the Treasurer, the Superintendent of Public Instruction, the Attorney General, the Commissioner of Agriculture, the Commissioner of Labor, and the Commissioner of Insurance are subject to impeachment and otherwise removable); art. IV, § 17(1), (2) (expressly providing for removal of justices and judges by impeachment and other methods). Thus, a strong argument can be made that our reliance in *Heaton* upon statutory provisions relating to impeachment should no longer be deemed authoritative on the issue of which officers may be impeached, as the people have now expressly provided for removal of constitutional officers by impeachment in every instance where that was their intent. We need not resolve that issue here, however, as both the statute and our Constitution now expressly provide that most constitutional officers are removable by impeachment, specifically setting forth the offices involved by their titles. Neither the Constitution nor the statute provides that district attorneys are subject to removal by impeachment. Therefore, applying the maxim *inclusio unius est exclusio alterius* (inclusion of one is exclusion of another), we conclude that impeachment of district attorneys is not within the intent of either the Constitution or the statute and that district attorneys are not subject to removal by impeachment.

**[2]** Having determined that district attorneys are not subject to removal by impeachment, we still must resolve the greater issue of whether the General Assembly has the authority under our Constitution to provide by statute for a method of removal of an individual holding the constitutional office of district attorney, where the Constitution does not itself specify any method whatsoever for removal of an individual from that office.

Our Constitution provides with regard to district attorneys that:

The General Assembly shall, from time to time, divide the State into a convenient number of prosecutorial districts, for each of which a District Attorney shall be chosen for a term of four years by the qualified voters thereof, at the same time and places as

members of the General Assembly are elected. The District Attorney shall advise the officers of justice in his district, be responsible for the prosecution on behalf of the State of all criminal actions in the Superior Courts of his district, perform such duties related to appeals therefrom as the Attorney General may require, and perform such other duties as the General Assembly may prescribe.

N.C. Const. art. IV, § 18(1). As we have often noted, it is "firmly established that our State Constitution is not a grant of power. All power which is not expressly limited by the people in our State Constitution remains with the people, and an act of the people through their representatives in the legislature is valid unless prohibited by that Constitution." *State ex rel. Martin v. Preston*, 325 N.C. 438, 448-49, 385 S.E.2d 473, 478 (1989). Therefore, this Court gives acts of the General Assembly great deference, and a statute will not be declared unconstitutional under our Constitution unless the Constitution clearly prohibits that statute. *Brannon v. N.C. State Bd. of Elections*, 331 N.C. 335, 339, 416 S.E.2d 390, 392 (1992).

Our Constitution is silent as to the matter of removing district attorneys from office. Applying the presumption of constitutionality of actions of the General Assembly inherent in our Constitution, we find persuasive the reasoning set forth over 121 years ago by the Supreme Court of Alabama in a case construing constitutional and statutory provisions quite similar to those before us in the present case. There, as here,

> [t]he [State] Constitution simply creates the office of [district attorney], defines the manner of election, and fixes the duration of the official term. Thus far, the office is beyond legislative control. The office may not be abolished . . . nor can the official term be enlarged or diminished. The whole matter of removal or suspension from office, the causes for which, and the mode in which it may be effected, not being expressed in the Constitution, is a proper subject of legislation. It is part of the sovereignty of the State, part of the law-making power, and is not either expressly or impliedly withheld from the general assembly.

*Ex parte Wiley*, 54 Ala. 226, 228 (1875). For similar reasons, we conclude that neither Article IV, Section 18 nor any other provision of the Constitution of North Carolina prohibits the General Assembly from enacting a statutory method for the removal of district attorneys from office, so long as district attorneys whose removal from office is

sought are accorded due process of law. Accordingly, we conclude that N.C.G.S. § 7A-66 does not violate the Constitution of North Carolina and that the superior court had jurisdiction of this case. Therefore, we overrule this assignment of error.

[3] By another assignment of error, respondent Spivey contends that his removal from office for his behavior, including the use of the word "nigger" and other tasteless language, violates the First Amendment to the Constitution of the United States and Article I, Section 14 of the Constitution of North Carolina. Spivey argues that he has been wrongly removed from office because of the content of his speech. He claims that this violated his constitutionally protected right to express his viewpoint. We disagree.

Taken in context, the use of the word "nigger" by Spivey squarely falls within the category of unprotected speech defined by the Supreme Court in *Chaplinsky v. New Hampshire*, 315 U.S. 568, 86 L. Ed. 1031 (1942). In *Chaplinsky*, the United States Supreme Court wrote

> [I]t is well understood that the right of free speech is not absolute at all times and under all circumstances. There are certain well-defined and narrowly limited classes of speech, the prevention and punishment of which have never been thought to raise any Constitutional problem. These include the lewd and obscene, the profane, the libelous, and the insulting or "fighting" words— those which by their very utterance inflict injury or tend to incite an immediate breach of the peace.

*Id.* at 571-72, 86 L. Ed. at 1035. At the hearing on this matter, there was testimony concerning the hurt and anger caused African-Americans when they are subjected to racial slurs by white people. We question, however, whether such testimony was necessary to the findings of the superior court in this case. Rule 201(b) of the North Carolina Rules of Evidence provides that a trial court may take judicial notice of a fact if it is not subject to reasonable dispute in that it is generally known within the territorial jurisdiction of the trial court. N.C.G.S. § 8C-1, Rule 201(b) (1992). No fact is more generally known than that a white man who calls a black man a "nigger" within his hearing will hurt and anger the black man and often provoke him to confront the white man and retaliate. The trial court was free to judicially note this fact. Additionally, evidence concerning the circumstances surrounding Spivey's verbal outbursts in the bar tends to show that his use of this racial epithet in the present case was

**IN RE SPIVEY**

[345 N.C. 404 (1997)]

intended by him to hurt and anger Mr. Jacobs and to provoke a confrontation with him. " 'Resort to epithets or personal abuse is not in any proper sense communication of information or opinion safeguarded by the Constitution.' " *Chaplinsky*, 315 U.S. at 572, 86 L. Ed. at 1035 (quoting *Cantwell v. Connecticut*, 310 U.S. 296, 309-10, 84 L. Ed. 1213, 1221 (1940)).

Respondent Spivey cites *Bond v. Floyd*, 385 U.S. 116, 17 L. Ed. 2d 235 (1966), for the proposition that governmental restriction on the ability of elected officials to express their views, however objectionable, stifles public debate and violates the First Amendment. We conclude that nothing in that opinion protects the use of racial invective by a public official against a member of the public in a bar. Spivey's use of the word "nigger" and his abusive conduct on the night in question did not in any way involve an expression of his viewpoint on any local or national policy. In fact, Spivey himself has repeatedly asserted since the incident in question that the use of the racial epithet "nigger" does not in any way reflect his views about race.

Mr. Spivey's abusive verbal attack on Mr. Jacobs which gave rise to the inquiry removing him from office is not protected speech under the First Amendment. Instead, when taken in context, his repeated references to Mr. Jacobs as a "nigger" presents a classic case of the use of "fighting words" tending to incite an immediate breach of the peace which are not protected by either the Constitution of the United States or the Constitution of North Carolina. We overrule this assignment of error.

By another assignment of error, Spivey contends that his conduct on the night in question was not so improper as to support his removal from office. Relying on several cases involving this Court's censure or removal of judges under N.C.G.S. § 7A-376, Spivey argues that a district attorney cannot be removed from office for directing racially abusive epithets against a member of the public while not acting in his official capacity. We do not agree.

[4] The statutory procedures for removal of district attorneys are entirely different from those providing for censure or removal of judges. Under N.C.G.S. § 7A-66, if the superior court judge finds that one of the enumerated grounds for removal of a district attorney exists, "he *shall* enter an order permanently removing the district attorney from office, and terminating his salary." N.C.G.S. § 7A-66 (emphasis added). Removal is the only sanction available and is mandatory. This Court's decisions as to whether to remove the judges

involved in those cases or to impose the lesser punishment of censure were based upon a statute entirely unrelated to district attorneys which authorized this Court, upon receipt of a recommendation by the Judicial Standards Commission, to exercise discretion in determining which, if either, punishment to impose. N.C.G.S. § 7A-376 (1995). Those cases are of little assistance in resolving the issue raised by this assignment of error.

[5] Having determined that N.C.G.S. § 7A-66 requires removal of a district attorney if one of the enumerated grounds exists, we focus our attention on whether Spivey's conduct could properly be found to be conduct prejudicial to the administration of justice which brings the office of district attorney into disrepute. We conclude that the evidence supports such a finding by the trial court. In his order removing Spivey from office, Judge Allsbrook found that "this incident has resulted in the loss of confidence, trust, and respect for this high office by a significant number of residents of the Fifth Prosecutorial District." It could hardly be argued otherwise. When considering the often unrestrained powers that the people have given our district attorneys in our Constitution and statutes, it is paramount that the office of district attorney be held in a manner that exemplifies fairness and equal justice under the law. There can be no question that the use of racial epithets against a member of the public by a district attorney in an apparent attempt to provoke an affray in public is conduct prejudicial to the administration of justice which brings the office into disrepute.

Spivey further complains that the hearing consisted of a stream of witnesses who, through personal anecdotes and opinions, described in detail the history of the mistreatment of African-Americans. We agree that the trial court allowed the testimony to range far beyond the matters directly at issue. However, it is crucial to note that this matter was heard without a jury. In this context, we cannot say the trial court erred in allowing the African-American citizens who testified to give anecdotal testimony relating to the pain and frustration they had felt as a result of long-past acts of racism. Where, as here, the trial judge acted as the finder of fact, it is presumed that he disregarded any inadmissible evidence that was admitted and based his judgment solely on the admissible evidence that was before him. *Bizzell v. Bizzell*, 247 N.C. 590, 604-06, 101 S.E.2d 668, 678-79, *cert. denied*, 358 U.S. 888, 3 L. Ed. 2d 115 (1958). The ultimate finding of the superior court, that Spivey's conduct giving rise to this inquiry was conduct prejudicial to the administration of justice

which brings the office into disrepute, is supported by the evidence and the other findings. The statute itself compels removal upon a finding of one of the enumerated grounds and leaves no discretion in this regard with the superior court. N.C.G.S. § 7A-66. Therefore, this assignment of error must be overruled.

By another assignment of error, respondent Spivey contends that under N.C.G.S. § 7A-66, the superior court had no authority to appoint a member of the Bar to act as counsel for purposes of the inquiry and to present the evidence concerning Spivey's conduct. He also contends in support of this assignment of error that the superior court had no authority to cause the State Bureau of Investigation (SBI) to investigate Spivey's conduct and that the SBI exceeded the investigative authority granted it by law in conducting its investigation in connection with this case.

[6] Spivey's argument against the superior court's appointment of independent counsel is based in part on his contention that this resulted in his being removed by a court which had itself directed and controlled the discovery and presentation of evidence against him. We conclude, however, that it is precisely because the trial judge should not both present the case against a district attorney and pass judgment on the case that the judge necessarily had the power to appoint independent counsel. A trial court has inherent power "to do all things that are reasonably necessary for the proper administration of justice." *Beard v. N.C. State Bar*, 320 N.C. 126, 129, 357 S.E.2d 694, 696 (1987). This Court has always recognized that a proceeding resulting in the removal of an individual from public office must accord that individual due process of law. *E.g., State ex rel. Caldwell v. Wilson*, 121 N.C. 425, 28 S.E. 554 (1897) (action in the nature of *quo warranto* to try title to the office of Railroad Commissioner arising during the political turmoil in North Carolina during the late nineteenth century). Due process requires a neutral decision-maker. In order to comply with this due process requirement, it was necessary that the superior court appoint independent counsel to gather and present the evidence relating to Spivey's conduct. Therefore, it was within the proper inherent power of the superior court to appoint Mr. Fuller to present the evidence relating to the allegations against Spivey giving rise to the judicial inquiry concerning Spivey's conduct.

[7] Respondent Spivey also contends under this assignment of error that the superior court deprived him of a fair judicial inquiry by requesting and receiving the assistance of the SBI in investigating the

allegations concerning Spivey's conduct. Assuming *arguendo* that the superior court erred in seeking the assistance of the SBI and that the investigation here went beyond that agency's statutory authority, we fail to see how any such error could have unfairly prejudiced Spivey. It appears that the SBI simply located witnesses who were present at the bar on the night in question and took their statements, which were then turned over to Mr. Fuller. Any private citizen could have done the same. We see no reason to believe that the mere fact that the SBI performed this function was unfairly prejudicial to Spivey. Spivey has not contested the essential facts of the incident at issue. We conclude that the use of the SBI in this case was not prejudicial error. This assignment of error is overruled.

[8] By another assignment of error, respondent Spivey contends that the superior court committed prejudicial error by treating the proceeding before it as a civil action; by designating the affiants who commenced the inquiry as "petitioners"; and by allowing such "petitioners" to participate as parties, counsel, and witnesses. He further argues that the superior court committed prejudicial error by treating each of the affidavits complaining of his conduct, some of which were erroneously captioned as "petitions," as initiating a separate proceeding with the affiant as the "petitioner." We do not agree with these contentions.

It is true that a district attorney removal proceeding under N.C.G.S. § 7A-66 is an inquiry; it is neither a civil suit nor a criminal prosecution. It is commenced by the filing of one or more sworn affidavits with the clerk of superior court of the county where the district attorney resides. N.C.G.S. § 7A-66. The matter is then brought to the attention of the senior regular resident superior court judge who within thirty days shall act on the charges or refer them to another superior court judge to be acted upon. *Id.* If probable cause exists to believe that the charges are true and, if true, create grounds for removal, then a hearing will be ordered. *Id.* The hearing shall be held in not less than ten days nor more than thirty days after the district attorney has received written notice of the proceedings and a true copy of the charges. *Id.* At the hearing, the superior court judge shall hear evidence and make findings of fact and conclusions of law. *Id.* If he finds that grounds for removal exist, then he shall enter an order permanently removing the district attorney from office. *Id.*

Even though the procedural irregularities Spivey complains of occurred here, we see no reason to believe that he was thereby prej-

udiced. The hearing resolving the matters raised in this inquiry was conducted by one of our most able and experienced superior court judges. Fortunately, this was the first inquiry resulting in the removal of a district attorney ever to occur. Unfortunately, this left the judge to apply the procedures set forth in N.C.G.S. § 7A-66 for the first time and in the context of an emotionally charged setting. The record before us makes us confident that Judge Allsbrook, conducting this proceeding *without a jury*, understood the issues before him and the proper focus for the inquiry in this case and that he properly conducted this proceeding, which was the first of its kind to be held. Accordingly, we conclude that respondent Spivey was not prejudiced by any procedural irregularity, and we overrule this assignment of error.

Having considered each of respondent's assignments of error, we conclude that the order permanently removing District Attorney Spivey from office was free from prejudicial error. Therefore, we affirm that order.

AFFIRMED.